[Cite as *McElroy v. McElroy*, 2016-Ohio-5148.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


CHARLES SCOTT MCELROY          :          JUDGES:
                               :
                               :          Hon. Sheila G. Farmer, P.J.
        Petitioner-Appellee    :          Hon. Patricia A. Delaney, J.
                               :          Hon. Craig R. Baldwin, J.
-vs-                           :
                               :          Case No. 15 CA 27
                               :
DIRK MCELROY                   :
                               :
                               :
        Respondent-Appellant   :          O P I N I O N


CHARACTER OF PROCEEDING:          Appeal from the Guernsey County Court
                                  of Common Pleas, Case No.
                                  15DV00169



JUDGMENT:                         AFFIRMED



DATE OF JUDGMENT ENTRY:           July 27, 2016



APPEARANCES:

 For Petitioner-Appellee:          For Respondent-Appellant:

 No Brief Filed                    DOUGLAS C. BOND
                                   700 Courtyard Centre
                                   116 Cleveland Ave., N.W.
                                   Canton, OH 44702

*Delaney, J.*

{¶1} Respondent-Appellant Dirk McElroy appeals the September 30, 2015 judgment entry of the Guernsey County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Petitioner-Appellee Charles Scott McElroy ("Father") is the father of Respondent-Appellant Dirk McElroy ("Son"). The adult parties live in Guernsey County, Ohio.

{¶3} On April 23, 2015, Father filed a petition for a domestic violence civil protection order against Son in the Guernsey County Court of Common Pleas. The trial court granted an ex parte civil protection order and set the matter for a full hearing before the magistrate on May 13, 2015. The following evidence was adduced at the full hearing.

{¶4} In 2015, Father learned that his parents had agreed to give the mineral rights to their property to Son. Father was concerned that Son had pressured his grandparents into giving him their mineral rights. Father spoke to the grandparents regarding his concerns.

{¶5} Son became aware that Father had spoken to the grandparents about the mineral rights and he telephoned his Father on April 20, 2015. Son yelled at Father for interfering and told Father to come to his house so they could "bang it out" in the yard. Based on Son's behavior during the phone call, Father was concerned for the grandparents. The grandparents' house is on Son's property. Father called his brother, who has a house near the grandparents' property, and asked his brother to check on the grandparents to make sure they were okay. Father also chose to check on the grandparents himself.

{¶6}   Father and his wife drove to the grandparents' house in a direction that would purposefully not take him past Son's house. Father thought Son would be at his house and he did not want Son to know he was at the grandparents. When Father arrived, Son and his family were eating dinner at the grandparents' house. Father's brother had also arrived at the grandparents' house. Son and Father's brother saw Father arrive at the grandparents' house. They left house and walked up the hill to meet Father.

{¶7}   Father exited his truck and heard yelling, but he realized the yelling was coming from his grandson who was playing nearby. He then saw Son walking towards him, yelling at him to leave. Father walked around a camper parked on the property when Son came up to him and threw a kick at his arm. Father blocked him and Son continued to kick at his arm. Father's wife got out of the truck holding a stick that Father kept in the truck to protect himself from dogs. The kicking stopped, and Father's wife and Son's wife stood back while Father and Son yelled at each other.

{¶8}   Son then turned and walked to his truck. Son opened the driver's side door of the truck and pulled out a holstered gun. Father and Father's wife testified Son shook the holster off the gun and then pointed it at his Father. Father's brother saw Son take out a holstered gun from his truck, but he did not see him remove it from the holster or point the gun at Father. Father's brother told Son to put the gun away. Father's wife ran to the brother's house to call the sheriff.

{¶9}   Father's wife returned to Father's truck after calling the sheriff from the house. She left the stick at the house. When she came back, Son started yelling at Father's wife and she responded. Father was afraid that Son would hit his wife, so Father pushed Son away. Father and Son fought, with the fight ending when Father pushed Son

over a trailer hitch. Father and his wife left in their truck and called the sheriff when they arrived home. The Guernsey County Sheriff responded but did not file charges against Father or Son.

{¶10}   The magistrate granted the domestic violence civil protection order on May 18, 2015. The magistrate ordered the terms of the CPO effective until May 15, 2020.

{¶11} Son filed objections to the CPO on June 3, 2015 and August 25, 2015. The trial court overruled the objections and adopted the CPO on September 20, 2015.

{¶12} It is from this judgment Son now appeals.

## ASSIGNMENTS OF ERROR

{¶13} Son raises four Assignments of Error:

{¶14} "I. THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AS THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH A PATTERN OF CONDUCT.

{¶15} "II. THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AS THE EVIDENCE IS INSUFFICIENT TO WARRANT A CIVIL PROTECTION ORDER AS THE PARTIES ENGAGED IN MUTUAL COMBAT AND APPELLEE FAILED TO RETREAT.

{¶16} "III. THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AGAINST APPELLANT BECAUSE APPELLEE HAS FAILED TO SHOW BY THE PREPONDERANCE OF THE EVIDENCE THAT HE AND HIS FAMILY ARE IN DANGER OF FUTURE ACTS OF DOMESTIC VIOLENCE.

{¶17} "IV. THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER AGAINST APPELLANT BECAUSE APPELLEE HAS FAILED TO SHOW BY

THE PREPONDERANCE OF THE EVIDENCE HE WAS PLACED IN FEAR OF SERIOUS PHYSICAL HARM."

## ANALYSIS

{¶18} Son argues the trial court abused its discretion when it granted Father's petition for a domestic violence CPO against Son. We disagree.

### *Standard of Review*

{¶19} Pursuant to R.C. 3113.31, in order to obtain a domestic violence CPO, the petitioner must prove by a preponderance of the evidence the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *McBride v. McBride*, 12th Dist. Butler No. CA2011–03–061, 2012–Ohio–2146, ¶ 12, citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

(a) Attempting to cause or recklessly causing bodily injury;

(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(d) Committing a sexually oriented offense.

R.C. 2903.211 provides, in relevant part: "(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause

physical harm to the other person or cause mental distress to the other person." *Doran v. Doran*, 5th Dist. Licking No. 14-CA-86, 2015-Ohio-2369, ¶¶ 27-28.

{¶20} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755, ¶ 12 citing *Olenik v. Huff*, 5th Dist. Ashland No. 02–COA–058, 2003–Ohio–4621, ¶ 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶21} In *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986), the Ohio Supreme Court noted the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its judgment for that of the fact finder. A trial court is in a much better position than an appellate court to weigh the evidence, because it views the witnesses and observes their demeanor, gestures, and inflections. *See Seasons Coal Company v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). The fact finder is free to believe all, part, or none of the testimony of each witness. *See State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (1992). Therefore, a judgment supported by competent and credible evidence going to all the elements of the case generally will not be disturbed by a reviewing court. *See Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

### *Pattern of Conduct*

{¶22} Son argues in his first Assignment of Error that the evidence in the record does not support the trial court's finding that Son engaged in a pattern of conduct warranting the issuance of the domestic violence CPO pursuant to R.C. 3113.31(A)(1)(b).

{¶23} A trial court utilizes R.C. 3113.31(A)(1) to determine whether to grant a domestic violence CPO. One of the statutory definitions of "domestic violence" is "[p]lacing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code." R.C. 3113.31(A)(1)(b). R.C. 2903.211 defines "menacing by stalking" and R.C. 2911.211 defines "aggravated trespass." In this case, the trial court found Son engaged in menacing by stalking in violation of R.C. 2903.211. That statute reads:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's mental distress, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2903.211(A)(1).

{¶24} The statute defines "pattern of conduct" as:

* * * two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, or two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents, directed at one or more persons employed by or belonging to the same corporation, association, or other organization. Actions or incidents that prevent, obstruct, or delay the performance by a public official, firefighter, rescuer, emergency medical services person, or emergency facility person of any authorized act within the public official's, firefighter's, rescuer's, emergency medical services person's, or emergency facility person's official capacity, or the posting of messages or receipt of information or data through the use of an electronic method of remotely transferring information, including, but not limited to, a computer, computer network, computer program, computer system, or telecommunications device, may constitute a "pattern of conduct."

R.C. 2903.211(D)(1).

{¶25} Son contends the timing of the events in this case prevents a finding that Son engaged in a pattern of conduct to knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. Son states the alleged incidents in this case were not separate incidents, but were the culmination of one fight between Father and Son on April 20, 2015.

{¶26} Son first called Father on the telephone and threatened to fight with him. Father next drove to his parent's home to check on them. When Father arrived at the property and Son realized he was there, Son walked to the top of the hill to meet Father. Son kicked at Father's arm. Father blocked him and Son continued to kick at his arm. The kicking stopped, and Father's wife and Son's wife stood back while Father and Son yelled at each other.

{¶27} Son then turned and walked to his truck. Son opened the driver's side door of the truck and pulled out a holstered gun. Father and Father's wife testified Son shook the holster off the gun and then pointed it at his Father. Father's brother saw Son take out a holstered gun from his truck, but he did not see him remove it from the holster or point the gun at Father. Father's brother told Son to put the gun away.

{¶28} "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *Wilson v. Rowe*, 5th Dist. Knox No. 15-CA-14, 2016-Ohio-523, ¶ 28 quoting *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2nd Dist.2000). One incident is insufficient to establish a "pattern of conduct." *Id*. The statute does not define the term "closely related in time," but case law suggests the trier of fact should consider the evidence in the context of all circumstances of the case. *Middletown v. Jones*, 167 Ohio App.3d 679, 856 N.E.2d 1003, 2006–Ohio–3465, ¶ 10 (12th Dist.). Trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Guthrie v. Long*, 10th Dist. No. 04AP913, 2005–Ohio–1541, ¶ 12.

{¶29} After the evidence was presented at the full hearing, the magistrate stated as to a pattern of conduct:

> It says a pattern of conduct that shall knowingly cause another person to believe that the offender will call physical harm to the other person or will cause mental distress. Now even if it is imminent harm it is there because they are right there. This is not a phone call. This is not a distance. The phone call was made. The threat was made on the phone. There is one instance. Okay in the pattern of conduct. They get there. Say even the kick wasn't made. He pulled the gun out of his car. Okay. So even if the kick wasn't made, and I believe the kick was made, but assuming the kick wasn't made, you still have the gun coming out of the car. So it is not a question of whether I am going to issue the Civil Protection Order.

(T. 69). The trial court thus determined that Son's actions in calling Father on the phone and threatening to fight him, kicking Father in the arm, and then pointing a gun at Father constituted a pattern of conduct.

{¶30} R.C. 2903.211 defines a pattern of conduct as two or more events closely related in time. The statute is silent as to the meaning of the term, "closely related in time." Courts have instructed that the events could be on the same day, if there is a sufficient interval between the events. Again, there is no definition for a "sufficient interval." The trier of fact must ultimately determine whether there are two or more events closely related in time based on the evidence considered in the context of all circumstances of the case. In this case, the trial court found the Son's actions of calling the Father, kicking Father, and pointing a gun at Father were two or more events closely related in time. A review of

the record shows that while the events occurred on the same day, there was sufficient intervals between the events. We find there is competent and credible evidence in the record to support the trial court's finding.

{¶31} Son's first Assignment of Error is overruled.

### *Mutual Combat*

{¶32} Son argues in his second Assignment of Error that the trial court erred in granting a domestic violence CPO because Father and Son were engaged in mutual combat and Father failed to retreat. We disagree.

{¶33} The determination of whether a trial court will grant a CPO is dependent upon whether petitioner has proved by a preponderance of the evidence the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. In support of his argument regarding mutual combat, Son cites to case law where the appellate court determined the underlying facts did not warrant the issuance of a CPO. Son has not presented any case law stating it is black-letter law that a trial court may not grant a CPO if the parties were engaged in mutual combat.

{¶34} We further find Son's argument that Father and Son were engaged in mutual combat is unsupported by the record. Father's uncontroverted testimony was that after Son's threatening phone call, Father went to the property to check on the safety of his parents. Father called his brother to check on the safety of his parents. Father drove to his parent's property in a direction that would not take him past Son's house. When Father arrived at the property, Son initiated the physical altercation by kicking Father in the arm. Father's wife testified she got out of the truck holding a stick after Son began

kicking Father. Father's wife did not use the stick against Son and left the stick at the brother's house after the sheriff's department was called.

{¶35} When Father's wife returned to the scene, Son began yelling at her. Father was concerned that Son would hurt his wife so Father pushed Son away and a physical fight ensued between Father and Son.

{¶36} The facts show Son was the primary aggressor and the parties engaged in mutual combat after Son's initial violent behavior. The trial court's determination that Father proved by a preponderance of the evidence that Son engaged in an act of domestic violence against Father is supported by competent and credible evidence.

### Future Acts of Domestic Violence

{¶37} In his third Assignment of Error, Son argues the trial court erred in issuing a domestic violence CPO because the evidence did not establish that Father or his family were in danger of future acts of domestic violence by Son. We disagree.

{¶38} "The statutory criterion to determine whether or not to grant a civil order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755, ¶ 21 quoting *Wetterman v. B.C.*, 9th Dist. Medina No. 12CA0021–M, 2013–Ohio–57, ¶ 11 (additional citations omitted). "Evidence of past abuse, however, is relevant and may be an important factor in determining whether there is a reasonable fear of further harm. *Solomon v. Solomon*, 157 Ohio App.3d 807, 813 N.E.2d 918, 2004–Ohio–2486, ¶ 27 (7th Dist.). *See also Osherow v. Osherow*, 9th Dist. No. 21407, 2003–Ohio–3927, ¶ 12. Nevertheless, even with established past abuse there must be some competent, credible evidence that there is a present fear of harm. *Holland v. Garner*, 12th Dist. No. CA2009–

09–226, 2010–Ohio–2963, ¶ 9, quoting *Solomon* at ¶ 27." *Wetterman v. B.C.,* 9th Dist. Medina No. 12CA0021-M, 2013-Ohio-57, ¶ 12

{¶39} Son contends Father failed to present evidence in this case that there was a present fear of future harm by Son. The factual circumstances of this case prevent a finding in Son's favor on this issue. Son lives on the same property as Father's parents. Father and his brother own property that is located near the parents' house. On April 20, 2015, after Son threatened to fight with Father, Father came to his parents' house with the intent of checking on his parents, but Son was at the parents' house and intercepted Father. Son became aggressive towards Father and violence ensued resulting in Son pulling a gun on Father. The impetus of these events was a disagreement between Father and Son about the grandparents' decision to give Son their mineral rights. It is unclear from the record whether the Father and Son resolved this financial matter.

{¶40} Father testified at the hearing that he was not fearful or afraid during the events on April 20, 2015. The trial court found Son engaged in domestic violence pursuant to R.C. 2903.211, which states that, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." In this case, Son threatened to fight with Father, kicked Father, and pulled a gun on Father. We find the record supports the trial court's determination under R.C. 3113.31 as to the existence or threatened existence of domestic violence.

{¶41} Son's third Assignment of Error is overruled.

***Fear of Imminent Serious Physical Harm***

{¶42} Son argues in his final Assignment of Error that the record does not support the trial court's determination that Son placed Father by the threat of force in fear of imminent serious physical harm.

{¶43} A review of the record shows the trial court determined Son committed a violation of R.C. 2903.211, menacing by stalking. An offender violates R.C. 2903.211 by engaging in a pattern of conduct that knowingly causes another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. An element of R.C. 2903.211 is "physical harm", not "imminent serious physical harm." Further, the use of the word "or" in R.C. 3113.31(A)(1)(b) allows the trial court to find the offender committed domestic violence either by placing another person by the threat of force in fear of imminent serious physical harm or committed a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code.

{¶44} Son's fourth Assignment of Error is overruled.

## CONCLUSION

{¶45} Son's four Assignments of Error are overruled.

{¶46} The judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Baldwin, J., concur.