[Cite as *Feister v. Felton*, 2018-Ohio-3345.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| BRYANT FEISTER | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Petitioner-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2018 AP 02 0008 |
| MICHAEL FELTON | : |  |
|  | : |  |
| Respondent-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County
                             Court of Common Pleas, Case No. 2017 VI
                             01 0024

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 20, 2018

APPEARANCES:

For Petitioner-Appellee          For Respondent-Appellant

MICHAEL JOHNSON                  DAN GUINN
117 South Broadway Street        104 South Broadway Street
Box 1007                         P.O. Box 804
New Philadelphia, OH 44663       New Philadelphia, OH  44663

*Gwin, P.J.*

{¶1} Respondent-appellant Michael Felton appeals the January 10, 2018 judgment entry of the Tuscarawas County Court of Common Pleas granting petitioner-appellee Bryant Feister's petition for civil protection order.

*Facts & Procedural History*

{¶2} On January 25, 2017, appellee filed a petition for domestic violence civil protection order against appellant on behalf of himself and the parties' three children. The magistrate granted an ex parte protection order and scheduled a hearing.

{¶3} The magistrate held a hearing on August 15, 2017 and August 25, 2017. Dustin Stull ("Stull") is appellee's neighbor. Stull testified that last October, he saw appellant dragging her oldest child out of the home by his arm, put him over her shoulder, and carried him to the car. Further, that appellant pushed appellee. Stull stated appellant was yelling and acting out of control, being aggressive and cussing, and backed up her car and hit appellee with the car. Stull also testified to an incident in January of 2017 where he heard appellant yelling and pounding on the door telling appellee to open the door or she was going to burn the house down. Stull stated appellant is very aggressive with the children, putting her hands on them while they beg her to stop. Stull does not believe the children are safe with appellant. On cross-examination, Stull testified that while the incidents concerned him, he did not call the police or Job and Family Services.

{¶4} Eric Feister, appellee's cousin, ("E.F."), testified to an incident where appellant smacked one child in the mouth and smacked another child in the butt. E.F. was concerned about the safety of the children. E.F. testified he has been at the home when appellant was throwing things at appellee while the children were at home. E.F.

stated he was at a football game in 2016 and appellant told appellee she would kill him in his sleep if he ever tried to take her kids away from her. E.F. also testified to several other incidents where appellant hit appellee. E.F. stated appellant has threatened appellee and he does not believe the children are safe around her because she physically and mentally abuses them.

{¶5} Appellee testified he and appellant have three children together. Appellee stated he filed for the civil protection order because she was physical with the children. He did not report her to children's services because he did not want his children to see their mother in jail. Appellee detailed an incident the previous October where appellant tried to drag the oldest child off the bed, pushed him, and dragged the child outside the house.

{¶6} Appellee stated he was concerned about appellant's new boyfriend, as he grabbed the oldest child and left bruising. Appellee testified that when he approached appellant about gaining custody of the children in October of 2016, appellant told him if he took her kids, she would "kill me in my f-ing sleep."

{¶7} Appellee testified there were other incidents that led up to filing the civil protection order. These incidents include: appellant threatened a girl appellee was dating; appellant took glasses off their daughter's face and threw them across the parking lot; appellant pushed appellee; appellant told him she bought a gun and was going to commit suicide; appellant came to the home cussing, screaming, and beating the door, trying to kick the door in; and appellant was beating on his door and threatened to burn his f-ing house down with them in it if he didn't answer the door. Appellee stated it was shortly after she came to the house and threatened to burn the house down with appellee

and the oldest son inside when he filed the civil protection order. Appellee took the threat by appellant that she would kill him in his sleep very seriously.

{¶8} Appellee testified to Exhibit 1, a photograph of his oldest son with a mark on his face that appellant admitted to leaving on his face when she struck him on October 23, 2016. Appellee testified to Exhibit 2, a photograph of his oldest son in December with the scar remaining on his face. Appellee stated he audio-taped his conversations with appellant and testified he had eighty-nine hours of recordings. Appellee testified to and played several portions of these recordings in court. In Recording Number 2, on October 19, 2016, appellant states, "I'm gonna kill myself." In Recording Number 8, appellant states, "Yes, I beat my fucking kids. Get over it." In Recording Number 9 appellant talks about appellee bringing his girlfriend to a wrestling tournament and states, "I will yank that bitch out by her fucking hair." In Recording Number 11, appellant admitted to calling one of the children "a little bitch." In Recording Number 13, appellant tells one of the children "you're grounded. I'm gonna put your fucking teeth down your throat. I have had it, enough." In Recording Number 14, appellant states, "no wonder mother fuckers kill their fucking ex-husbands." Appellee testified to Exhibit 4, a Facebook post by appellant saying she likes to shoot guns, which appellee believed was aimed at him.

{¶9} Appellee testified he is very concerned for his safety and the safety of the children around appellant. He is concerned for the children's safety because appellant left scars on their face, beat them, and mentally abused them. Appellee stated he considers it mental abuse when appellant tells her children she is going to kill herself and they are never going to see her again. Appellee testified he and the children have been in counseling.

{¶10} On cross-examination, appellee testified he was with appellant on and off for ten years. Further, that after some of the incidents, appellee continued to let appellant see the children. Appellee never saw appellant have a gun and did not call the police for most of the incidents.

{¶11} On re-direct, appellee testified he did not call the police after a lot of the incidents because he did not want to see the children's mother in jail and, even when he did call the police, nothing was done.

{¶12} Appellant testified that she never verbally abused appellee, never hit any of her children, never verbally abused her children, did not threaten to break the windows of appellee's vehicle, her ex-boyfriend never hit the children, she did not drag her child by the neck, she did not tell appellee she would kill him, she never threatened to beat up appellee's girlfriend, never told appellee she was going to kill herself, she does not own a gun, and did not drive by appellee's house constantly. Appellant testified it was not her on the recordings appellee played and she never screamed or cursed at her children. Appellant stated there is no truth to any of appellee's allegations.

{¶13} Appellant testified that since the temporary protection order was issued, she was arrested twice due to accusations she violated the order, but the charges were dismissed. Appellant stated appellee contacted her, wanting her to come back home. Appellant believes appellee is trying to keep the children from her because he is angry at her.

{¶14} Appellant stated she did catch her thumbnail on her son's face, but it was an accident and she was trying to separate a fight.

{¶15} Haley Hartline ("Hartline"), appellant's friend, lived with appellant and appellee for five months.  Hartline testified she never saw appellant verbally abuse appellee, never saw appellant verbally abuse the children, and appellant normally took care of the children because appellee was not home.  Hartline testified when appellant scratched her son's face, it was an accident.

{¶16} On rebuttal, appellee testified it is his and appellant's voice on the recordings.

{¶17} The magistrate granted appellee a civil protection order against appellant on August 29, 2017.  Appellant filed objections to the magistrate's decision on August 31, 2017 and filed supplemental objections on November 13, 2017, arguing there was insufficient evidence to show a CPO should be granted.

{¶18} The trial court held a hearing on appellant's objections to the magistrate's decision on December 20, 2017.  The trial court issued a judgment entry on January 10, 2018 overruling appellant's objections to the magistrate's decision and ordering that the domestic violence civil protection order filed August 29, 2017 remain effective until August 25, 2019.

{¶19} Appellant appeals the January 10, 2018 judgment entry of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶20} "I. THE COURT ERRED IN GRANTING A CIVIL PROTECTION ORDER AGAINST THE APPELLANT IN FAVOR OF THE APPELLEE AND THEIR CHILDREN."

I.

{¶21} Appellant argues the trial court abused its discretion when it granted appellee's petition for a domestic violence CPO against her.  We disagree.

**{¶22}** Pursuant to R.C. 3113.31, in order to obtain a domestic violence CPO, the petitioner must prove by a preponderance of the evidence the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

> (a) Attempting to cause or recklessly causing bodily injury;

> (b) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

> (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

> (d) Committing a sexually oriented offense.

**{¶23}** R.C. 2903.211 provides, in relevant part: "(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." *Doran v. Doran*, 5th Dist. Licking No. 14-CA-86, 2015-Ohio-2369.

**{¶24}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶25} In *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), the Ohio Supreme Court noted the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its judgment for that of the fact finder. A trial court is in a much better position than an appellate court to weigh the evidence, because it views the witnesses and observes their demeanor, gestures, and inflections. See *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). The fact finder is free to believe all, part, or none of the testimony of each witness. See *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Therefore, a judgment supported by competent and credible evidence going to all the elements of the case generally will not be disturbed by a reviewing court. See *Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

{¶26} Appellant contends the trial court abused its discretion in granting the CPO because the incidents and threats testified to did not place appellee in fear of "imminent" harm and because the testimony shows appellee was not fearful of appellant nor would appellant's actions have caused a reasonable person to be in fear. We disagree.

{¶27} In *Watts v. Watts*, 5th Dist. Fairfield No. 13-CA-63, 2014-Ohio-1901, we cited to the Tenth District's analysis necessary to determine whether to grant a domestic violence CPO:

> Civil protection orders are intended to prevent violence before it happens. *Young v. Young*, 2d Dist. No.2005-CA-19, 2006-Ohio-978, ¶ 105. Where a trial court grants a CPO based on a petitioner's fear of imminent serious physical harm, the critical inquiry under [R.C. 3113.31] is whether a reasonable person would be placed in fear of imminent (in the sense of

unconditional, non-contingent), serious physical harm. *Fleckner v. Fleckner*, 10th Dist. No. 07AP-988, 2008-Ohio-4000, ¶ 20, 177 Ohio App.3d 706, 895 N.E.2d 896, quoting *Maccabee v. Maccabee* (June 29, 1999), 10th Dist. Franklin No. 98AP-1213, quoting *Strong v. Bauman*, (May 21, 1999), 2d Dist. No. 17256.

Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if they fear resulting from those threats is reasonable. *Fleckner* at ¶ 21, quoting *Lavery v. Lavery* (Dec. 5, 2001), 9th Dist. No. 20616, appeal not allowed (2002), 95 Ohio St.3d 1409 (internal quotation marks omitted). The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent. *Id.*, quoting *Gatt v. Gatt* (April 17, 2002), 9th Dist. No. 3217-M, citing *Eichenberger v. Eichenberger*, (1992), 82 Ohio App.3d 809, 613 N.E.2d 678.

Courts use both a subjective and an objective test in determining the reasonableness of the petitioner's fear. The subjective test inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm. *Fleckner* at ¶ 23 (collecting case). By contract, the objective test inquires whether the petitioner's fear is reasonable under the circumstances. *Id.*

*Strassel v. Chapman*, 10th Dist. Franklin No. 09AP-793, 2010-Ohio-4376.

{¶28} Further, trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *McElroy v. McElroy*, 5th Dist.

Guernsey No. 15 CA 27, 2016-Ohio-5148. Evidence of past abuse is relevant and may be an important factor in determining whether there is a reasonable fear of further harm; however, even with past abuse, there must be some competent, credible evidence that there is a present fear of harm. *Solomon v. Solomon,* 157 Ohio App.3d 807, 2004–Ohio–2486, ¶ 23 (7th Dist.). The reasonableness of fear should be determined with reference to the history between the petitioner and respondent. *Fleckner v. Fleckner*, 10th Dist. Franklin No. 07AP-988, 2008-Ohio-4000.

{¶29} In terms of imminence, both appellee and Stull testified to an incident on January 17, 2017, several days before appellee filed his petition, where appellant was at appellee's home, banging on the door, telling appellee if he did not open the door, she was going to "burn the f-ing house down." Further, several incidents testified to by Stull and/or appellee occurred in the fall of 2016, including appellant dragging her child out of the home and telling appellee she would kill him in his sleep if he took the children away from her. See *Bressler v. Nunemaker,* 5th Dist. Licking No. 17-CA-06, 2017-Ohio-5804 (finding competent and credible evidence of imminent harm when appellee testified to several acts of domestic violence which occurred the year in which she filed the CPO petition). Finally, though the full hearing was not conducted until August of 2017, appellant requested three continuances of the hearing that were granted, one in February of 2017, one of March of 2017, and one in April of 2017.

{¶30} We further find there is credible evidence in the record that appellant's threat actually caused appellee to fear imminent serious physical harm and that appellee's fear is reasonable under the circumstances. Appellee testified he took the threat by appellant that she would kill him very seriously. Appellee testified he is very

concerned for his safety and the safety of the children around appellant. Appellee stated that he did not call the police on many incidents, but he did not want to see the mother of his children in jail. Stull testified he does not believe the children are safe with appellant. E.F. testified appellant has threatened appellee and he does not believe the children are safe around her because she physically and mentally abuses them. While appellant denies these allegations, the trial court is in the best position to determine whose testimony was more credible and substantiated by the evidence. The trial court could determine that appellee's fear of harm was reasonable based on his history with appellant. Based on the record presented, we find there is credible evidence in the record to show appellee proved, by a preponderance of the evidence, that he feared imminent (in the sense of unconditional, non-contingent) serious physical harm by appellant and his fear was reasonable under the circumstances.

{¶31} Finally, the trial court overruled appellant's objections to the magistrate's decision, finding the civil protection order could also be granted pursuant to R.C. 3113.31(A)(1)(c), by "committing any act with respect to a child that would result in the child being an abused child." R.C. 2151.031(D) provides that an "abused child includes any child who * * * (D) because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." We find there is credible evidence in the record that the children suffered physical or mental injury that harms or threatens to harm their welfare, as Stull testified he saw appellant drag a child out of the house, E.F. testified he saw appellant smack a child, appellee testified appellant dragged a child out of the house, struck their oldest son in October leaving bruising, and mentally abused the children by telling them she was going

to kill herself. While appellant testified she never physically or mentally abused her children, as the trier of fact, the choice between conflicting testimony rests solely with the finder of fact and we may not substitute our judgment for that finder of fact.

{¶32} Appellant finally argues that the recordings played by appellee were incomplete, distorted what appellant said, and should not have been utilized to grant the civil protection order. We disagree. During the hearing, appellant did not object to the recordings as played by appellee. Further, when counsel for appellee moved to have the recordings admitted as exhibits, appellant did not object to their admission.

{¶33} It is well-settled that a party must object in order to preserve an issue for appeal. *Morris v. McQuillen*, 5th Dist. Richland No. 2008-CA-87, 2009-Ohio-2848. Because appellant failed to object to the testimony during the hearing and did not object to their admission as an exhibit, we must determine whether the trial court committed plain error in allowing the testimony. Plain error is reversible error to which no objection was lodged at trial; it is obvious and prejudicial, and if permitted it would have a material adverse effect on the character and public confidence in judicial proceedings. *Id.*; Crim.R. 52(B). Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id.*; *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). In this case, we find no such exceptional circumstances. Further, there was conflicting testimony as to the recordings. Appellee testified it was his voice and appellant's voice on the recordings. Appellant testified it was appellee's voice on the recordings, but it was not her voice, and she did not know whose voice it was. As the trier of fact, the trial court was best equipped to determine whose

testimony was more credible and substantiated by the evidence.  Thus, we find the trial court did not err in considering the recordings.

{¶34}  Accordingly, we find the trial court did not abuse its discretion in finding appellee proved, by a preponderance of the evidence, that appellant engaged in an act of domestic violence against appellee and/or the children, as defined by R.C. 3113.31(A)(1) and in issuing the civil protection order.

{¶35}  Appellant's assignment of error is overruled.

{¶36}  The January 10, 2018 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, P. J,

Hoffman, J., and

Wise, Earle, J., concur