[Cite as *J.F. v. A.F.*, 2022-Ohio-441.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| J.F. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Petitioner-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21 CAF 06 0030 |
| | : | |
| A.F. | : | |
| | : | |
| | : | |
| | : | |
| Respondent-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
of Common Pleas, Domestic Relations
Division, Case No. 21 DV H 01 0012

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     February 14, 2022

APPEARANCES:

For Petitioner-Appellee:

PORTER R. WELCH
Welch Legal Services, L.L.C.
21 ½ Middle Street
P.O. Box 125
Galena, OH 43021

For Respondent-Appellant:

MICHAEL A. MARROCCO
Saia & Piatt, Inc.
98 North Union St.
Delaware, OH 43015

*Delaney, J.*

{¶1} Respondent-Appellant appeals the May 28, 2021 judgment entry of the Delaware County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

### Petition for Domestic Violence Civil Protection Order

{¶2} Petitioner-Appellee J.F. ("Petitioner") and Respondent-Appellant A.F. ("Respondent") are divorced with two children, ages eight and ten years old. On January 8, 2021, Petitioner filed a Petition for Domestic Violence Civil Protection Order ("DVCPO") with the Delaware County Court of Common Pleas, Domestic Relations Division, requesting relief for herself and their two children against Respondent. The trial court granted the Ex Parte Order on January 8, 2021, naming Petitioner and the two children as parties protected by the Order. The full hearing was scheduled for January 28, 2021.

### Full Hearing

{¶3} The full hearing commenced on January 28, 2021 before the magistrate. Petitioner was represented by counsel and Respondent appeared pro se. The following facts were adduced at the hearing.

{¶4} Petitioner testified to the incident giving rise to her petition for a DVCPO. Petitioner had been working from home since March 2020 due to the pandemic. For the first time in ten months, on January 7, 2021, Petitioner went into her office for work, located in Columbus. The two children had been at home with Petitioner while she was working remotely, but because she had to go into the office, she took the two children to their babysitter's home located in the City of Delaware. The last time the children had been to the babysitter's home was on Christmas Eve to drop off gifts. Petitioner believed

the only people who knew that she was going to the office on January 7, 2021 was herself, her supervisor, her coworker, and the babysitter.

{¶5} The office building where Petitioner worked was very large and mostly vacant due to the pandemic. There was a section of the building that had power and Petitioner was working in that area on January 7, 2021. From that section of the building, Petitioner could see the office building parking lot. Petitioner testified that while she was at work, she saw Respondent's car exiting the parking lot sometime before lunch at 12:30 p.m.

{¶6} After lunch that same day, Petitioner's babysitter and the children were playing outside in the front yard of the babysitter's house. Her house was at the end of a dead-end road. While they were outside, the babysitter saw Respondent's car drive by her house. She knew Respondent and recognized his car. The children recognized their father because one child commented it was not Wednesday and questioned why their father drove by without stopping. After she saw Respondent, the babysitter told the children to come inside the house and she immediately called Petitioner.

{¶7}   After she saw Respondent's car in the parking lot,

I was very nervous. I was at first surprised and a little concerned on why he would be there because it's an empty building, um. I really honestly I just thought about it for a little while, um, until the babysitter called me and said he was then in front of her house, um sometime after that and then I became very concerned and I locked my office door and I called my boss, um. I let the security guard know if anybody came there asking for me that they – he was to say I was not there, um.

* * * I was just very concerned. I didn't really understand what was going on. Once I found out that he had driven past the babysitter's a short time after he had been over at my office, I was very scared and I didn't understand what this was and I could not understand how he would even know, one, we weren't home, how would he know where we all were. That's – There's just no comprehending that to me and that made me very angry.

(T. 12-13).

{¶8} Petitioner testified she believed Respondent could cause her physical harm because Respondent had hit her and threatened her with physical harm in the past. He had been arrested for domestic violence against Petitioner after an incident where Respondent followed her, hid in the bushes outside her home, entered her home, and then slapped her. During their relationship, Respondent had been hospitalized with suicidal ideations and homicidal ideations towards Petitioner.

{¶9} Respondent's actions caused Petitioner to suffer mental stress from constant worry. She testified that she was constantly wondering if he was following her, like he did when he was arrested for domestic violence. She stated, "So when he's doing things like this, it makes me very scared. And then I'm very worried about where is he, what is he doing, why won't he leave me alone, um. * * * But yes, it scares me." (T. 14). Petitioner was concerned his mental health symptoms were escalating, which included past suicidal and homicidal ideations.

{¶10} During Respondent's testimony, he denied going to Petitioner's place of employment on January 7, 2021. He attempted to present evidence showing his whereabouts on January 7, 2021 through Google maps, receipts, and a security video of

the office building parking lot on the morning of January 7, 2021. Upon Petitioner's objection, the trial court did not permit the admission of the evidence because Respondent failed to comply with the evidentiary rules. He admitted that he drove past the babysitter's home on January 7, 2021 but stated his purpose was to obtain her street address for his tax forms. He sent a text to Petitioner later that day asking for the babysitter's social security number so he could complete the tax form.

{¶11} Respondent testified that when he and Petitioner were separated, Petitioner had a party at the house, and she told him that he could not come. He was suspicious so he drove to the house at the time of the party and saw only one car parked in the driveway. He parked his car down the street, walked to the house, and waited in the bushes under the front window. He then moved to the back of the house, under the bathroom window. He heard noises coming from the house, so he opened the garage door and entered the house. Petitioner yelled at him to get out of the house, and he slapped her. The police were called to the house and Respondent waited for the police to arrive because he felt his actions were justified due to Petitioner lying to him. He was arrested and convicted of domestic violence.

{¶12} Respondent stated he was hospitalized during their marriage for suicidal ideation. He was hospitalized after his arrest because he was suffering from suicidal and homicidal ideations. He was currently receiving medical care for his mental health but had improved to where he did not require medication.

{¶13} During her testimony of why she was concerned about Respondent's behavior, Petitioner said in February 2020, Respondent went to their child's pediatrician's office after an appointment for their child and he was asked to leave. Respondent

admitted going to the pediatrician's office after he received a text from Petitioner informing him their child had an appointment that day. When he arrived at the office, Petitioner had already left. He asked the office for the child's medical records and learned the doctor had prescribed a medication the child might be allergic to. When he asked to speak to the doctor, the office told Respondent to leave, or they would call the police.

## Magistrate's Decision

{¶14} The Magistrate's Decision was issued on February 1, 2021, granting the full DVCPO, naming only Petitioner as a protected party. In the decision, the magistrate stated she found the testimony of Petitioner to be more credible than Respondent's testimony. The magistrate determined Petitioner established by a preponderance of the evidence that Respondent engaged in behavior that would constitute menacing by stalking, which is defined under R.C. 2903.211 as a pattern of conduct which knowingly causes another person to believe that the offender would cause them physical harm or mental distress. The magistrate granted the full DVCPO against Respondent for a period of five years.

## Objections to the Magistrate's Decision

{¶15} Respondent filed objections to the Magistrate's Decision on February 12, 2021. In his initial objections, he stated without further explanation that, "Petitioner failed to establish the requisite elements justifying a Civil Protection Order."

{¶16} On March 29, 2021, Respondent filed supplemental objections to the Magistrate's Decision where he raised additional arguments. He argued that Petitioner failed to show she experienced mental distress as defined by R.C. 2903.211(D)(2); her claims were insufficient to support the granting of a DVCPO because they were based

more on Respondent's past conduct than the alleged events of January 7, 2021; and there was no evidence that Respondent knowingly attempted to cause mental distress to Petitioner.

### Judgment Entry Overruling Objections

{¶17} On May 28, 2021, the trial court issued its judgment entry overruling Respondent's objections to the Magistrate's Decision. In a comprehensive and detailed examination, the trial court considered the objections and independently reviewed the record to find the evidence supported the magistrate's recommendation that a DVCPO was warranted under R.C. 3113.31. It overruled the objections and adopted the Magistrate's Decision, making the DVCPO effective against Respondent until January 8, 2026.

{¶18} It is from this judgment that Respondent now appeals.

### ASSIGNMENT OF ERROR

{¶19} Respondent raises one Assignment of Error:

{¶20} "THE TRIAL COURT ERRED IN GRANTING PETITIONER-APPELLEE'S REQUEST FOR A CIVIL PROTECTION ORDER AS THE JUDGMENT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

### ANALYSIS

{¶21} In his sole Assignment of Error, Respondent contends the trial court erred when it granted the full DVCPO because the judgment was not supported by the evidence. We disagree.

**Standard of Review**

{¶22} Pursuant to R.C. 3113.31, to obtain a domestic violence civil protection order, the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Horne v. Stafford*, 5th Dist. Fairfield No. 20-CA-17, 2020-Ohio-5073, 2020 WL 6306049, ¶ 10 citing *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶23} As defined by R.C. 3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member, in relevant part:

\* \* \*

(ii) Placing another person by the threat of force in fear of imminent serious

physical harm or committing a violation of section 2903.211 or 2911.211 of

the Revised Code;

\* \* \*

{¶24} The trial court determined, and the parties do not dispute, the only relevant provision to this DVCPO is R.C. 3113.31(A)(1)(ii), which includes the crime of menacing by stalking under R.C. 2903.211. R.C. 2903.211(A)(1) defines "menacing by stalking" as follows in part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person

or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person."

{¶25} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶26} A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶27} Respondent raises almost identical arguments in his appeal of the trial court's judgment to grant the DVCPO as he did in his objections to the Magistrate's Decision. In its May 28, 2021 judgment entry overruling Respondent's objections, the trial court examined the individual elements of a DVCPO to determine whether the DVCPO in this case was warranted. To demonstrate menacing by stalking, Petitioner was required to establish by a preponderance of the evidence that Respondent (1) engaged in a pattern

of conduct (2) that Respondent knew (3) would cause Petitioner to believe that Respondent would cause her physical harm or mental distress. R.C. 2903.211(A)(1). We likewise review the elements of a DVCPO to determine if the trial court abused its discretion when it found the evidence supported Petitioner's request for a DVCPO.

### Pattern of Conduct

{¶28} Respondent claims the trial court improperly relied upon Respondent's past conduct to find that he engaged in domestic violence through menacing by stalking. R.C. 2903.211(D)(1) defines "pattern of conduct" as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." Respondent claims the trial court cannot consider his past conduct towards Petitioner to determine if there was a pattern of conduct to support a finding of domestic violence to issue the civil protection order.

{¶29} The trial court reviewed the two incidents on January 7, 2021 precipitating Petitioner's petition for a DVCPO. The evidence showed that

> on January 7, 2021, chance circumstances led Petitioner to be working from her office (rather than working remotely from home due to the pandemic) for the first time in ten (10) months. *Tr. 8-10, 12*. That same day, she saw Respondent leave the parking lot of her office. *Tr. 12*. Later that same day, Respondent drove by [the babysitter's] house, who, because Petitioner was working at the office, was also babysitting the children for the first time in months. *Tr. 13, 16, 24, 26, 31*.

(Judgment Entry, May 28, 2021).

{¶30} Respondent first contends there is no evidence that he was driving the car that Petitioner testified she saw leaving the office building parking lot on January 7, 2021. At the hearing, Respondent testified he had evidence to prove he was not in the area at the time Petitioner said she saw his car, but the magistrate determined the evidence was not admissible. Respondent does not raise any evidentiary issues on appeal. Accordingly, the only issue remaining is the credibility of Petitioner and Respondent. The magistrate and trial court found Petitioner to be more credible than Respondent, and as fact finders, we must defer to the trial court's determination of credibility.

{¶31} The trial court found the two incidents were sufficient to constitute a pattern of conduct. Petitioner testified only four people knew that she would be going into the office for one day in January 2021 after working from home since March 2020. The trial court acknowledged that in isolation, the two incidents did not seem subjectively or objectively threatening, but it was permitted to consider the context surrounding the incidents when it made its determination.

{¶32} In *Watts v. Watts*, 5th Dist. Fairfield No. 13-CA-63, 2014-Ohio-1901, the respondent argued that past acts could not be used to show a current danger of domestic violence. *Id.* at ¶ 20. The purpose of a civil protection order is to prevent violence before it happens. *Id.* at ¶ 21 quoting *Strassel v. Chapman*, 10th Dist. Franklin No. 09AP-793, 2010-Ohio-4376, ¶ 7-9 quoting *Young v. Young*, 2nd Dist. No. 2005-CA-19, 2006-Ohio-978, ¶ 105. To prevent violence, the trial court must determine whether violence may occur. One area the trial court must consider before granting a domestic violence civil protection order is whether the petitioner's fear of harm from the respondent is reasonable:

Where a trial court grants a CPO based on a petitioner's fear of imminent serious physical harm, "the critical inquiry under [R.C. 3113.31] 'is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm.' " *Fleckner v. Fleckner*, 10th Dist. No. 07AP–988, 2008–Ohio–4000, ¶ 20, 177 Ohio App.3d 706, 895 N.E.2d 896, quoting *Maccabee v. Maccabee* (June 29, 1999), 10th Dist. No. 98AP–1213, quoting *Strong v. Bauman* (May 21, 1999), 2d Dist. No. 17256.

"Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable." *Fleckner [v. Fleckner,* 10th Dist. No. 07AP-988, 2008-Ohio-4000] at ¶ 21, quoting *Lavery v. Lavery* (Dec. 5, 2001), 9th Dist. No. 20616, appeal not allowed (2002), 95 Ohio St.3d 1409 (internal quotation marks omitted). "The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent." *Id.*, quoting *Gatt v. Gatt* (Apr. 17, 2002), 9th Dist. No. 3217–M, citing *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 816, 613 N.E.2d 678.

Courts use both a subjective test and an objective test in determining the reasonableness of the petitioner's fear. The subjective test "inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm." *Fleckner* at ¶ 23. By contrast, the objective test "inquires whether the petitioner's fear is reasonable under the circumstances." *Id.*

*Watts v. Watts*, 2014-Ohio-1901 at ¶ 21.

{¶33} Further, trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Ferguson v. Ferguson*, 5th Dist. Morgan No. 20AP0004, 2021-Ohio-297, 2021 WL 387642, ¶ 36 citing *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148. Evidence of past abuse is relevant and may be an important factor in determining whether there is a reasonable fear of further harm; however, even with past abuse, there must be some competent, credible evidence that there is a present fear of harm. *Id.* citing *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, ¶ 23 (7th Dist.).

{¶34} The trial court found the incidents of January 7, 2021 were part of a larger pattern of conduct that would cause Petitioner's fear of physical harm or mental distress to be reasonable under the circumstances. Petitioner testified, and Respondent confirmed, that he had previously stalked and physically assaulted her, which resulted in his arrest for domestic violence. Respondent testified he had been hospitalized with homicidal ideations against Petitioner. In this case, the trial court's consideration of Respondent's past actions was not so much as to support a pattern of conduct as defined by R.C. 2903.211(D)(1), but to demonstrate that Petitioner's fear of physical harm or mental distress because of the Respondent's conduct on January 7, 2021 was reasonable. Pursuant to *Watts*, we find no error for the trial court to consider Respondent's past conduct to provide context to determine whether Petitioner's fear was objectively reasonable under the circumstances.

**Knowingly**

{¶35} Respondent next contends the trial court erred when it found he was aware his conduct would cause Petitioner to believe he would cause her physical harm or mental distress. He contends that, assuming arguendo, he was at Petitioner's place of work on January 7, 2021, he did not know that Petitioner would see him in the parking lot. He admittedly drove by the babysitter's house, but he similarly argues that he did not know the babysitter and the children would be playing outside, see him, and tell Petitioner he drove by the house.

{¶36} Pursuant to R.C. 2901.22(B), a person acts "knowingly" when, "regardless of purpose * * * the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶37} The trial court found Respondent's arguments to be misguided. It found the test is whether Respondent knew that his conduct on January 7, 2021 would probably cause Petitioner to believe that he would cause her physical harm or mental distress. The test is not whether Respondent knew that Petitioner would catch him engaging in the conduct. Under the definition of "knowingly," the issue is whether he was aware his conduct would probably cause a certain result or be of a certain nature. The trial court permitted evidence that Respondent had previously stalked and physically harmed Petitioner as relevant and probative to show that Petitioner suffered mental distress because of Respondent's conduct on January 7, 2021. The trial court relied on our case in *State v. Woodgeard*, 5th Dist. Fairfield No. 45-CA-SEP-1993, 1994 WL 167928 (Apr. 29, 1994), where we found in a criminal action for menacing by stalking, evidence of the

defendant's past conduct with the victim was relevant and probative of the defendant's pattern of conduct in knowingly causing the victim mental distress. *Id.* at *1. "Stalking by its very definition requires examination of the offender's past conduct involving the victim." *Id.* at *1

### Mental Distress

{¶38} The magistrate determined that Petitioner established she was in fear of physical harm from Respondent's conduct. In the trial court's independent review of the record, it found there was sufficient evidence to establish Petitioner's claim of fear of physical harm *and* mental distress to support her request for the DVCPO against Respondent. We note that it is sufficient for Petitioner to establish a fear of physical harm *or* mental distress. (Emphasis added.) *L.L. v. R.B.*, 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553, 2017 WL 3980553, ¶ 23 citing *Elkins v. Reed*, 5th Dist. Stark No. 2013CA0091, 2014–Ohio–1217, ¶ 33.

{¶39} R.C. 2903.211(D)(2) defines "mental distress" as:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶40} Respondent claimed in his objections, and on appeal, that Petitioner failed to show she suffered any mental infirmities as the result of Respondent's actions. For the trial court to determine if a petitioner suffered mental distress,

      * * * whether treatment is sought is not determinative; rather, it is the duty

      of the trier of fact to determine whether a victim suffered mental distress as

      a result of the offender's actions. *State v. Rucker* (2002), Butler App. No.

      CA2001–04–076, 2002 WL 83731. In making this determination, the trial

      court "may rely on its knowledge and experience in determining whether

      mental distress has been caused." *Smith v. Wunsch*, 162 Ohio App.3d 21,

      2005–Ohio–3498, 832 N.E.2d 757, ¶ 18.

*L.L. v. R.B.*, 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553, 2017 WL 3980553, ¶ 25 quoting *Theibert v. Anderson*, 5th Dist. Knox No. 16CA00013, 2017–Ohio–1029, ¶ 18 quoting *Middletown v. Jones*, 167 Ohio App.3d 679, 2006–Ohio–3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.). "Mental distress need not be incapacitating or debilitating." *McNaughton v. Cochenour*, 4th Dist. Ross No. 15CA3479, 2015–Ohio–4648, ¶ 28.

      {¶41} The record in this case supports the trial court's decision that Petitioner suffered mental distress as defined by R.C. 2903.211(D)(2). She testified that felt "very nervous" after seeing Respondent's car at her place of work and after she learned Respondent had driven by the babysitter's home, Petitioner became "very concerned" and "very scared." (T. 12, 13). Petitioner stated she "couldn't think straight at all." (T. 20). She could not understand or comprehend how he would know where she and the children were, and it made her very angry. (T. 13). After hearing from the babysitter, Petitioner locked her office door, notified her boss, and called security to tell them if anyone came to the office asking for her, to say that she was not there. (T. 13). Respondent's behavior on January 7, 2021 caused Petitioner to be constantly wondering, worried, and scared that his behavior was escalating again. (T. 14).

{¶42} Testimony that a respondent's conduct caused the person considerable fear can support a finding of mental distress. *L.L. v. R.B.,* 5th Dist. Guernsey No. 17 CA 02, 2017-Ohio-7553, 2017 WL 3980553, ¶ 27 citing *McNaughton, supra,* at ¶ 30 quoting *Middletown v. Jones,* 167 Ohio App.3d 679, 683, 2006–Ohio–3465, 856 N.E.2d 1003, 1006, ¶ 8 (12th Dist.) (testimony that petitioner felt "nervous," "frightened," "upset," "worried," and "scared" was sufficient to support a finding of mental distress). We find no abuse of discretion in the trial court's determination that found Respondent engaged in a pattern of conduct that caused Petitioner to fear mental distress. Further, the trial court did not err in considering Respondent's past actions to determine that Petitioner's fear of mental distress was reasonable.

**Physical Harm**

{¶43} The last element discussed by the trial court was "physical harm." As stated above, R.C. 2903.211 requires the petitioner establish a fear of physical harm or mental distress. Under R.C. 2903.211, the petitioner must show a "fear of physical harm," not a fear of "imminent serious physical harm" as required by R.C. 3113.31(A)(1)(a)(ii).

{¶44} The trial court noted that Respondent did not raise the issue of physical harm in his objections to the Magistrate's Decision. In his appeal, Respondent does not cite to any case law to support his argument the trial court erred as to this element. It is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support them. *Salameh v. Doumet,* 2019-Ohio-5391, 151 N.E.3d 83, (5th Dist.), ¶ 60 citing *Colvin v. Colvin,* 5th Dist. Guernsey No. 18 CA 27, 2019-Ohio-2209, 2019 WL 2375394, ¶ 40 citing *Washek v. Washek,* 5th Dist. Fairfield No. 18 CA 22,

2019-Ohio-1504, 2019 WL 1785411, ¶ 21 citing *Sisson v. Ohio Department of Human Services*, 9th Dist. Medina No. 2949–M, 2000 WL 422396.

### The Record Supports the DVCPO

{¶45} Upon this record, we find the trial court did not abuse its discretion in finding that Petitioner proved by a preponderance of the evidence that Respondent engaged in an act of domestic violence against her, as defined by R.C. 3113.31(A)(1) and R.C. 2903.211, and it was not error to issue the DVCPO.

### CONCLUSION

{¶46} The judgment of the Delaware County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.