OPINION
{¶ 1} Respondent-appellant, Brenda J. Strouse, appeals from a civil protection order ("CPO") of the Franklin County Court of Common Pleas, Division of Domestic Relations, entered against her pursuant to a petition filed by her daughter, petitioner-appellee, Christina N. Downs. For the following reasons, we affirm.
 {¶ 2} On February 25, 2005, Downs filed a CPO petition on behalf of herself and her five children. In this petition, Downs alleged that her mother had threatened that she would make Downs' life a living hell, steal Downs' oldest son, and physically harm Downs. Downs also stated that she feared her mother would hurt her and her children. After an ex parte hearing, the trial court issued a temporary CPO, and set the matter for a full hearing pursuant to R.C. 3113.31(D)(2).
 {¶ 3} On March 1, 2005, the trial court conducted a full hearing, at which both Downs and Strouse testified.[1]
During her testimony, Downs recounted the physical and emotional abuse she suffered as a child at her mother's hands. Downs maintained that this abuse made her passive and unable to naysay her mother when Strouse moved into her home in late 2003 without her permission. However, in January 2005, Downs finally demanded that Strouse vacate her home after her daughter told her that she had seen Strouse abuse Downs' son. Strouse refused to leave and, instead, began making threats that she would make Downs' life a living hell and make Downs pay.
 {¶ 4} In early February 2005, Strouse spent time in the hospital, where she underwent surgery. When Strouse returned to Downs' home after the surgery, Downs again pleaded with her mother to leave. Downs testified that, in response, Strouse "came down with her fist down at her side at me, calling me a fucking bitch, and if I messed with her, she would — I would get what was coming to me, she would make me pay, she would call Children's Services." (Tr. 17-18.)
 {¶ 5} Based upon Strouse's threats and her past behavior, Downs testified that she believed that she was in imminent danger from Strouse. Downs also testified that she believed Strouse would emotionally and physically abuse her children, particularly the two children by the ex-husband Strouse disliked, if Strouse was given the opportunity.
 {¶ 6} When testifying as to her version of events, Strouse contradicted the majority of Downs' testimony. Strouse stated that she began living at Downs' home at Downs' invitation so that she could care for her grandchildren while Downs worked. Although Strouse admitted that she refused to vacate the home when Downs asked her to go, Strouse maintained that she neither threatened nor abused her daughter and grandchildren.
 {¶ 7} At the conclusion of the hearing, the trial court found that Downs had proven by a preponderance of the evidence that she and her children were in danger of domestic violence. Accordingly, the trial court granted a CPO against Strouse for five years, terminating on February 25, 2010.
 {¶ 8} Strouse now appeals from that order and assigns the following errors:
[1.] The trial court's issuance of the civil protection order was against the manifest weight of the evidence and was an abuse of discretion.
[2.] The trial court abused its discretion in failing to order the apportionment of household and family property.
 {¶ 9} By her first assignment of error, Strouse argues that Downs did not present sufficient competent, credible evidence to meet the requirements for the issuance of a CPO. We disagree.
 {¶ 10} When reviewing whether a trial court properly granted a CPO, an appellate court must determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence. Abuhamda-Slimanv. Sliman, 161 Ohio App.3d 541, 2005-Ohio-2836, at ¶ 8-10
(recognizing inconsistency among appellate courts regarding the appropriate standard of review). See, also, Moore v. Bentley,
Franklin App. No. 03AP-1003, 2004-Ohio-5060, at ¶ 5; Maccabee v.Maccabee (June 29, 1999), Franklin App. No. 98AP-1213. Judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Further, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, an appellate court must construe it consistently with the trial court's judgment. Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581, 584.
 {¶ 11} In order for a trial court to grant a CPO, it must find that the petitioner has proven by a preponderance of the evidence that she and her family or household members are in danger of domestic violence. R.C. 3113.31(D); Felton v. Felton
(1997), 79 Ohio St.3d 34, paragraph two of the syllabus. "Domestic violence" is defined as:
[T]he occurrence of one or more of the following acts against a family or household member:
* * *
(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 * * * of the Revised Code[.]
R.C. 3113.31(A)(1). Pursuant to R.C. 2903.211(A)(1), which sets forth the offense of menacing by stalking, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(D)(1) defines "pattern of conduct" to mean "two or more actions or incidents closely related in time * * *."
 {¶ 12} In the case at bar, Downs testified that her mother made threats against her throughout January and February 2005. Because Strouse had previously physically abused her and her son, Downs reasonably believed that Strouse would carry out her threats in such a way that physical abuse would result again. Based upon this competent, credible evidence, we conclude that Strouse, by engaging in a pattern of conduct, caused Downs to believe that Strouse would cause physical harm to her and her children. Accordingly, the trial court did not err in issuing a CPO against Strouse, and we overrule Strouse's first assignment of error.
 {¶ 13} By her second assignment of error, Strouse argues that the trial court abused its discretion in not including in the CPO an apportionment of the household and family personal property. We disagree.
 {¶ 14} Pursuant to R.C. 3113.31(E)(1)(h), a trial court may, as part of a CPO, "[g]rant other relief that the court considers equitable and fair, including, but not limited to * * * the apportionment of household and family personal property." A trial court exercises its discretion in establishing the scope of a CPO, and its judgment will not be disturbed absent an abuse of that discretion. Abuhamda-Sliman, supra, at ¶ 9.
 {¶ 15} In the case at bar, there is no evidence that any household or family personal property even existed, much less evidence that Strouse requested apportionment of such property. Indeed, in her appellate brief, Strouse merely claims that she sought leave to remove her own personal property from the residence, and that the trial court erroneously refused to consider her request. Our review of the record shows that Strouse never asked the trial court to include in the CPO a means to retrieve her belongings. Further, the trial court only refused to determine any "issues you have about who is living where" (Tr. 75), not whether Strouse would be allowed to remove her property from Downs' home. Accordingly, we find the trial court did not abuse its discretion in determining the scope of the CPO and, thus, we overrule Strouse's second assignment of error.
 {¶ 16} For the foregoing reasons, we overrule both of Strouse's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
Bryant and Petree, JJ., concur.
[1] Stephanie Simpkins, Downs' friend, and Edgar Downs, Downs' brother and Strouse's son, also testified. Neither witness offered any testimony of relevance to this appeal.