**FLECKNER, Appellee,**

v.

**FLECKNER, Appellant.**

[Cite as *Fleckner v. Fleckner,* 177 Ohio App.3d 706, 2008-Ohio-4000.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–988.

Decided Aug. 7, 2008.

Grossman Law Offices L.P.A., and Andrew S. Grossman, for appellee.

Strip, Hoppers, Leithart, McGrath & Terlecky Co., L.P.A., and Kenneth R. Goldberg, for appellant.

SADLER, Judge.

{¶ 1} Respondent-appellant, Daniel R. Fleckner, appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting an order of protection, pursuant to R.C. 3113.31, against appellant in favor of petitioner-appellee, Susan H. Jahss Fleckner.

{¶ 2} The relevant factual and procedural history follows. The parties were married on August 13, 2004. In April 2007, the parties began living separately, and, through their attorneys, discussed terminating the marriage through a dissolution. However, on October 24, 2007, appellee filed a complaint for divorce.

On the same date, appellee sought and received an ex parte order of protection. In her petition she stated:

Respondent has engaged in the following act(s) of domestic violence * * *:

Respondent continually emails me, stops at my work, calls my parents + friends. On Saturday 10/20/07, he sent me an email that states that he's going to take out his anger + frustration on me in court. He harasses me in any way possible.

These are the only acts of domestic violence that appellee alleges that appellant committed and upon which she bases her petition.

{¶ 3} On October 31, 2007, the court held a hearing on the protection order. The parties were the only two witnesses. Appellee testified that during the parties' marriage, there were times when appellant would shove, push, harass, and scream at her. She stated that appellant has a "[b]ad" temper. During his testimony, appellant denied that he had perpetrated any physical aggression, but acknowledged that during the marriage there was "quite a bit of anger on both sides."

{¶ 4} When asked to explain the bases for her petition, appellant testified that after the parties separated, appellant would repeatedly e-mail her, send mail to her, and stop at her workplace, despite her requests that he not contact her except through their attorneys. She testified that the repeated attempts at contact scare her. She did not specify any particular statements or threats in any of these communications that scared her; she simply stated, "[E]very time I see something from him or hear something from him I'm scared." She stated that she believes that appellant is capable of physically harming her and that he would do so; however, she never identified any recent threatening action or words that caused her to believe this. She testified, "Every time I see something or even if I check my mailbox, I'm sick worried that he's going to send me something. Every time I open my e-mail at work, I'm worried I'm going to get one of his e-mails like that. If I go to work, I'm afraid that they're going to tell me that he's already been there. It just makes me sick. Every time I do a normal thing on a normal day, I wonder if he's going to have been a part of it or going to be a part of it."

{¶ 5} Appellee testified that on October 19, 2007, the parties had signed an agreement for a dissolution of the marriage, and she thought that all issues had therefore been settled between the parties. However, on the next day, she received an e-mail from appellant. The e-mail message contained a letter addressed to "family and friends." Appellee described the message as appellant's having written "that he was going to go at [her] with, you know, the full force in court and, you know, just telling people that [she was] lying and harassing him."

{¶ 6} Appellee introduced a printout of the e-mail message as Petitioner's Exhibit 1. In the message, appellant repeatedly characterizes appellee as "greedy" and states that appellant had fired his attorney on the day that the message was being sent. Appellant goes on to say that appellee was trying "to defraud [him] and [his] family of as much money as she can possibly get her hands on" and "to lie, cheat and steal as much as she can." The letter closes with the following language:

With that in mind, if she stupidly chooses not to accept my new lawyer's latest offer (which is considerably less than she could have gotten) I will have but one recourse, and that is show how she abandonded [sic] me and stole not only my dog, but my money.

I ask for all of your thoughts and prayers. As most of you know, I have a family member who has been given a sentence of death, and yet I am still faced with harassment and lies from her and her lawyer. If she chooses not to accept said offer, I will take out all of my anger and frustration in this family members' [sic] death sentence out on her in court. I hope all of you will help me out in this my hour of need, as I face an opponent who does not care about right or wrong, but only cares about money.

Dan

As it exists in the record before us, the phrase, "I will take out all of my anger and frustration in this family members' [sic] death sentence out on her in court" is highlighted on Petitioner's Exhibit 1 with a yellow highlighter marker.

{¶ 7} Appellee told the court that she felt that Petitioner's Exhibit 1 was a threat to her. She stated, "It scared me to death because the day before I had just signed the papers and then I get this crazy thing I don't even know what it's about but threatening me in it, so it scared the heck out of me." She stated that she is unaware of the family member's "death sentence" to which appellant referred in the e-mail message. Appellee's counsel inquired, "Has Dan ever told you that this case would get ugly if you didn't act the way he wanted you to act?" and appellee replied, "Yes." Counsel then inquired, "Is that kind of comment in keeping with how the relationship went while you guys were living together?" and appellee replied, "Yes."

{¶ 8} When asked on cross-examination what appellee meant in her petition by appellant's having "continually" e-mailed her, she stated that appellant had sent her four or five e-mails during the previous three and one-half months. When asked about appellant's having stopped by appellee's work, she explained that on two occasions, appellant had dropped off mail that was addressed to her, including a holiday greeting card and a dental-appointment reminder card. She stated that she had put on a forwarding order when she moved out of the couple's

home and that instead of bringing this mail to her, appellant could have put it back in the mail to her.

{¶ 9} Appellant testified that he brought the greeting card because it was addressed to both parties and to the couple's dog, so it was not forwarded under the forwarding order that applied only to appellee. He stated that the card was from a friend of appellee's, so he knew that she would want to receive it. He stated that he did not know why the dental-appointment reminder card had not been forwarded, but that he had brought it to appellee's workplace so that she would receive it. On one occasion, appellant sent her a letter requesting visitation time with the couple's dog, to which appellee did not respond. Appellee admitted that she has never seen appellant at her workplace and that he had never asked to see her on the two occasions during which he dropped off her mail.

{¶ 10} Appellee also testified that appellant has never come to her current home uninvited. When asked on cross-examination whether appellee was aware that appellant's aunt had been diagnosed with ovarian cancer, she replied that she was not.

{¶ 11} Appellant's counsel then inquired of appellee about her reaction to the e-mail message she received. The following colloquy took place:

Q. Looking at Exhibit 1 that your attorney put into place, it's your testimony that he says he's going to—that it makes you sick when he says he's going to go to court to take out his frustrations; correct?

A. I read it that he's told me many times he's going to go full throttle on me and he's going to do whatever he has to do. And, yeah, it does. It does. Because I know nothing about what happens in his family, so I'm not sure what that has to do with me.

Q. But it doesn't make you afraid?

A. Yes, it does.

Q. How is he going to hurt you in court?

A. I don't know how, but I'm afraid that he would hurt me outside of court.

Q. But he says he's going to go in court and do it. He's not saying he's going to do something outside of court.

A. He's said other things not in this document that make me afraid of him as well. Reading into the anger that I see in that and him saying about his anger and frustration, yeah, that does scare me.

{¶ 12} Following the presentation of evidence, the court announced its decision from the bench, explaining its decision as follows:

Section 3113.31 is designed to protect people from a number of different things. The mildest thing that it can do is protect somebody from being abused or harassed, and that was exactly what the Petitioner asked for was simply a protection order that she not be abused or harassed.

You take your victim as you find them. The Thin Skull Rule I think applies that some victims are easier victims of threat than others. I believe that Petitioner is that. She perceived a threat where other people might not. Therefore I believe that she's met her burden of proof.

And so the Court finds that through a threat of force the Respondent was placed or excuse me the Respondent placed Petitioner in a fear of imminent serious physical harm * * *.

{¶ 13} Appellant timely appealed and advances the following assignment of error for our review:

The trial court abused its discretion by applying the incorrect standard when it issued a civil protection order against Appellant.

{¶ 14} Justice Lundberg Stratton of the Supreme Court of Ohio has explained the process for obtaining a domestic violence civil protection order ("DVCPO") thusly:

As an alternative to filing a criminal charge of domestic violence, R.C. 3113.31 provides the victim of domestic violence the ability to seek immediate relief through a civil protection order, which enjoins the respondent from further violence against the family or household member. R.C. 3113.31(C) and (E). Upon the filing of a petition for a civil protection order, if the petitioner requests an *ex parte* order, the trial court must hold an *ex parte* hearing the same day. R.C. 3113.31(D)(1). Immediate and present danger of domestic violence to the family or household member constitutes good cause for issuing an *ex parte* order. Id.

After granting an *ex parte* order, the trial court must set the matter for a full hearing within seven court days. R.C. 3113.31(D)(2)(a). After the full hearing on the matter, the trial court may either dismiss the *ex parte* civil protection order or grant the protection order. R.C. 3113.31(E)(1). When granting a protection order, the trial court must find that the petitioner has shown *by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. Felton v. Felton* (1997), 79 Ohio St.3d 34, 679 N.E.2d 672, paragraph two of the syllabus, citing R.C. 3113.31(D).

(Emphasis sic.) *Parrish v. Parrish* (2002), 95 Ohio St.3d 1201, 1204, 765 N.E.2d 359 (Lundberg Stratton, J., dissenting).

{¶ 15} Though courts have sometimes expressed the standard of review of DVCPOs as that of abuse of discretion, this court has recently explained:

"[W]hen reviewing whether a trial court properly granted a CPO, an appellate court must determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence." *Downs v. Strouse*, Franklin App. No. 05AP–312, 2006-Ohio-505 [2006 WL 280417], at ¶ 10, * * *. This court will not reverse the trial court's decision for being contrary to the manifest weight of the evidence so long as there is some competent, credible evidence going to the essential elements of the case. Further, " 'a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.' " *Downs* at ¶ 10, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81 [10 O.B.R. 408, 461 N.E.2d 1273]. If the evidence is susceptible to more than one interpretation, the reviewing court must construe the evidence consistently with the trial court's judgment.

*Kabeer v. Purakaloth*, Franklin App. No. 05AP–1122, 2006-Ohio-3584, 2006 WL 1932333, ¶ 7; see also *Downs v. Strouse*, Franklin App. No. 05AP–312, 2006-Ohio-505, 2006 WL 280417, ¶ 10–11.

{¶ 16} For purposes of R.C. Chapter 3113.31, " 'domestic violence' means the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury; (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code; (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code; (d) Committing a sexually oriented offense." R.C. 3113.31(A)(1).

{¶ 17} This case does not involve any bodily injury or attempt to cause bodily injury, and it does not involve any offense against a child or a sexually oriented offense. There is no allegation that appellant committed a violation of R.C. 2903.211 or 2911.211. Thus, the DVCPO in this case was sought and granted based upon R.C. 3113.31(A)(1)(b); that is, placing another person by the threat of force in fear of imminent serious physical harm. In order to warrant the granting of the DVCPO, appellee was required to prove, by a preponderance of the evidence, that appellant had placed her, by threat of force, in fear of imminent serious physical harm. *Felton v. Felton* (1997), 79 Ohio St.3d 34, 679 N.E.2d 672, paragraph two of the syllabus.

■ {¶ 18} In support of his assignment of error,[1] appellant contends that the trial court erroneously used the "thin skull rule" in concluding that appellee had met her burden of proof and that without application of that rule, the trial court's judgment is against the manifest weight of the evidence. Specifically, appellant argues that there was no evidence that he ever threatened force and no evidence that appellee was in fear of imminent serious physical harm.

{¶ 19} R.C. Chapter 3113 does not define "force." However, the term is defined elsewhere in the Ohio Revised Code as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). Likewise, R.C. Chapter 3113 does not define "serious physical harm," but "serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

■ {¶ 20} Imminence, too, is undefined in the statute. Therefore, we must construe it according to its ordinary meaning. *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319. "Imminent" means "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." Webster's Third New International Dictionary (1969), 1130. "[I]mminence does not require an offender to carry out a threat immediately or be in the process of carrying it out. * * * [C]ivil protection orders are intended to prevent violence before it happens * * *." (Citations omitted.) *Young v. Young,* Greene App. No. 2005–CA–19, 2006-Ohio-978, 2006 WL 515522, ¶ 105. Therefore, "the critical inquiry under [R.C. 3113.31] 'is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm.'" *Maccabee v. Maccabee* (June 29, 1999), Franklin App. No. 98AP–1213, 1999 WL 430943, quoting *Strong v. Bauman* (May 21, 1999), Montgomery App. No. 17256, 1999 WL 317432, *4. "'This inquiry

---

1. Appellee did not file a brief or participate in any other way in the instant appeal.

necessarily involves both subjective and objective elements.' " *Young* at ¶ 106, quoting *Strong* at *4.

{¶ 21} "Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable." *Lavery v. Lavery,* (Dec. 5, 2001), Summit App. No. 20616, 2001 WL 1545663, discretionary appeal not allowed (2002), 95 Ohio St.3d 1409, 765 N.E.2d 876. "The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent." *Gatt v. Gatt* (Apr. 17, 2002), Medina App. No. 3217–M, 2002 WL 570389, citing *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 816, 613 N.E.2d 678.

{¶ 22} The "thin skull" or "eggshell plaintiff" rule is a creature of tort law, which states, "[A] defendant who negligently inflicts injury on another takes the injured party as he finds her, which means it is not a defense that some other person of greater strength, constitution, or emotional makeup might have been less injured, or differently injured, or quicker to recover." *McDevitt v. Wenger,* Tuscarawas App. No. 2002AP090071, 2003-Ohio-6096, 2003 WL 22700553, ¶ 34. We agree with appellant's assertion that assuming the existence of evidence of a threat of force, neither this court nor the Supreme Court of Ohio has applied the "thin skull rule" to civil protection orders under R.C. 3113.31.

{¶ 23} Rather, we have imposed both a subjective test, which inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm, and an objective test, which inquires whether the petitioner's fear is reasonable under the circumstances (that is, whether the respondent's threat would cause a reasonable person to fear imminent [unconditional, noncontingent] serious physical harm). See, e.g., *Downs v. Strouse,* Franklin App. No. 05AP–312, 2006-Ohio-505, 2006 WL 280417; *Dunkin v. Ireland,* Franklin App. No. 04AP–1175, 2005-Ohio-3371, 2005 WL 1532425; *Moore v. Bentley,* Franklin App. No. 03AP–1003, 2004-Ohio-5060, 2004 WL 2804785; *Wardeh v. Altabchi,* 158 Ohio App.3d 325, 2004-Ohio-4423, 815 N.E.2d 712. We agree that the trial court in this case erred in applying a solely subjective test to the question whether appellee met her burden of proof of a fear of imminent serious physical harm.

{¶ 24} "In order to grant a protective order, the evidence must be clear and unequivocal that the petitioner was placed in fear of imminent physical harm. The evidence must reveal a nexus between the communication directed to a petitioner with subsequent actual fear of imminent, serious physical harm. While an objective standard is to be applied to the impact upon a victim's state of mind as it relates to threatening communications, the evidence must be unequivocal." *Coughlin v. Lancione* (Feb. 25, 1992), Franklin App. No. 91AP–950, 1992 WL 40557.

{¶ 25} In the instant case, appellee based her petition on appellant's having e-mailed her approximately four times over a three and one-half month period, having dropped mail off to her workplace on two occasions, and on Exhibit 1, an e-mail that appellant forwarded to appellee, in which he told family and friends that if appellee did not accept his planned divorce settlement offer, he would "take out all of [his] anger and frustration in this family members' [sic] death sentence out on her in court." After careful review of the record before us, we conclude that it contains no evidence that appellant made an unequivocal threat of force, or that appellee held a reasonable fear of imminent serious physical harm.

{¶ 26} While a phrase such as "I'll get you"[2] or severe physical and verbal intimidation[3] may be sufficient to implicitly present a threat of force, necessitating an inquiry into whether the petitioner reasonably feared imminent serious physical harm, the "threat" contained within Exhibit 1 was a threat to take *legal action* and was not an explicit or implied threat of physical "violence, compulsion or constraint." R.C. 2901.01(A)(1). A threat to take legal action does not meet the R.C. 3113.31(A)(1)(b) definition of domestic violence. *Tyler v. Tyler*, Montgomery App. No. 20224, 2004-Ohio-5784, 2004 WL 2436594, ¶ 17–19. Similarly, a threat that things "could get really, really bad for everybody involved" if the parties go back to court over visitation with their children has been determined not to be a threat of force sufficient to constitute domestic violence under R.C. 3113.31. *Newhouse v. Williams*, 167 Ohio App.3d 215, 2006-Ohio-3075, 854 N.E.2d 565.

{¶ 27} In addition, although appellee testified to prior incidents in which appellant used actual force against her, "the reasonableness of [a petitioner's] fear of imminent serious physical harm may not be determined by incidents of prior domestic violence absent an initial, explicit indication that she was in fear of imminent serious physical harm on the date contained in the petition." *Bahr v. Bahr*, Ashland App. No. 03 COA 011, 2003-Ohio-5024, 2003 WL 22176762, ¶ 29.[4] In the present case, appellee testified that she was "scared to death" because she received appellant's threat to "take out all of [his] anger and frustration * * * on her in court" the day after the parties signed a separation agreement and a dissolution petition and that she was "sick worried that he's going to send me

---

2. See *Osherow v. Osherow*, Summit App. No. 21407, 2003-Ohio-3927, 2003 WL 21697408.

3. See *Markowitz v. Markowitz*, Cuyahoga App. No. 87418, 2006-Ohio-5932, 2006 WL 3234010.

4. See also *Eichenberger*, 82 Ohio App.3d at 816, 613 N.E.2d 678; *Bruner v. Bruner* (Sept. 22, 2000), Mahoning App. No. 99 C.A. 285, 2000 WL 1486452; *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, 813 N.E.2d 918, ¶ 23.

something." But this does not constitute evidence that she feared imminent serious physical harm on the dates contained in the petition. Where the alleged victim's own testimony fails to establish that she believed the danger was imminent, as opposed to sometime in the future, she has failed to prove domestic violence. *Henry v. Henry,* Ross App. No. 04CA2781, 2005-Ohio-67, 2005 WL 43888; *State v. Strunk* (Jan. 15, 1999), Hamilton App. No. C–980240, 1999 WL 12743.

{¶ 28} Moreover, we agree with the trial court's assessment that even if she had explicitly stated that she feared imminent serious physical harm, this fear would have failed the test of reasonableness. In characterizing appellee's testimony, the trial court stated, "[Appellee] perceived a threat where other people might not." Finally, appellant's "threat" is conditioned upon two actions within his sole control, which had not yet occurred and were not imminent: (1) appellant's hiring a new attorney to replace the one he had fired that day and (2) appellant's new attorney's conveying a new settlement offer to appellee. A third precondition to appellant's acting on his threat to take his anger out on appellee in court was appellee's rejection of the as-yet unformulated and unconveyed offer. These are not circumstances under which we can say that the "threat" in Exhibit 1 posed a threat of "imminent" harm. See *Maccabee,* Franklin App. No. 98AP–1213, 1999 WL 430943.

{¶ 29} Applying an objective test to the evidence, a reasonable person, situated similarly to appellee, would not fear imminent serious physical harm from a threat to take out one's anger in court, or from the act of dropping off mail on two occasions with no face-to-face contact, or from the acts of sending three or four other e-mails (the contents of which are not in evidence) over a three and one-half month period.

{¶ 30} The record fails to establish that appellant made any threat of force, that appellee feared serious physical harm as a result of any of appellant's actions or statements, or that she feared that appellant would undertake to harm her imminently. Finally, even if she had expressed such a fear, it would fail the objective test of reasonableness. For all these reasons, we conclude that the trial court's judgment was against the manifest weight of the evidence, and the court erred in issuing a DVCPO against appellant. Accordingly, appellant's single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is reversed, and the protection order issued against appellant is hereby vacated.

Judgment reversed.

PETREE and BROWN, JJ., concur.