[Cite as *A.A. v. M.G.S.*, 2020-Ohio-3469.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [A.A.], | : | |
| Petitioner-Appellee, | : | |
| | | No. 19AP-418 |
| v. | : | (C.P.C. No. 19DV-1035) |
| [M.G.S.], | : | (ACCELERATED CALENDAR) |
| Respondent-Appellant. | : | |

---

D E C I S I O N

Rendered on June 25, 2020

---

**On brief:** *Priya D. Tamilarasan*, for appellant. **Argued:**
*Priya D. Tamilarasan.*

---

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

DORRIAN, J.

{¶ 1} Respondent-appellant, M.G.S., appeals the June 12, 2019 civil protection order issued in favor of petitioner-appellee, A.A., by the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On May 30, 2019, A.A. petitioned with the trial court for a civil protection order and obtained an ex-parte temporary order. Approximately two weeks later, on June 12, 2019, the court held a hearing on the matter. At the hearing, four witnesses testified: A.A., her brother, her friend, and M.G.S.

{¶ 3} The first to testify was A.A. Under questioning from the trial judge, A.A. testified she was in a relationship with M.G.S. from 2012 to 2015 and, as a result, they have a child together. She testified that throughout the relationship he threatened her with a gun. She stated she had not had contact with M.G.S. since 2017. A.A. testified an incident occurred in late May 2019 at M.G.S.'s sister's house. She stated M.G.S. was present during an altercation between A.A. and his mother and sister during which A.A.'s pepper spray was triggered. She further testified that on the same day, M.G.S. followed her brother and threatened to kill him, his girlfriend, and their children. When asked about what M.G.S.

did to her directly, she stated he called her names, helped his mother and sister emotionally abuse her, lied to police saying she had assaulted his mother and sister, and managed to get her friend arrested on false allegations.

{¶ 4} The next witness was A.A.'s brother. He testified that on May 26, 2019, the same day of the altercation between A.A. and M.G.S.'s sister and mother, he was driving to A.A.'s house, the route which took him near M.G.S.'s house, when he noticed M.G.S. following him. He testified M.G.S. pulled him over twice and kicked his car and uttered threats against him and his family. He acknowledged that on other occasions he and M.G.S. have been cordial with each other. He stated he did not witness the confrontation between A.A. and M.G.S.'s mother and sister.

{¶ 5} A.A.'s friend was the final witness to testify in favor of the petition. He testified he witnessed an argument on New Year's Eve 2015-16 at 3-C Food Mart between A.A. and M.G.S. in which M.G.S. kicked the truck in which A.A. was sitting and drew a gun. He testified that although the argument was in Spanish, he was able to discern that M.G.S. was speaking aggressively. A.A.'s friend acknowledged there was, as of the hearing date, a criminal charge pending against him for pointing a gun at M.G.S. and his family on May 26, 2019, but he denied he had actually committed that offense.

{¶ 6} After the close of A.A.'s evidence, the trial court denied a motion by M.G.S.'s counsel for a directed verdict. M.G.S. then testified he had never assaulted or threatened A.A. and he had never been arrested or questioned by police for threats or violence against A.A. He also denied sending his family members to hurt her. M.G.S. asserted any problems between the two of them were as a result of her preventing him from seeing his child. He agreed he had a concealed carry license[1] and at first denied a criminal history, but ultimately

---

[1] This court notes the trial court did not mark the box on the protection order to indicate "**WARNING TO LAW ENFORCEMENT: RESPONDENT HAS FIREARMS ACCESS – PROCEED WITH CAUTION**." (Emphasis sic.) However, M.G.S. testified he has a concealed carry license and that he retrieved a pistol to confront A.A.'s friend on May 26, 2019. A.A. testified that throughout her relationship with M.G.S., he threatened her with a gun. A.A.'s friend also testified that M.G.S. had previously drawn a gun on A.A. and him. Based on this testimony, it would have been appropriate for the trial court to warn law enforcement that "**RESPONDENT HAS FIREARMS ACCESS [AND TO] PROCEED WITH CAUTION**." We do note the trial court did order respondent: "**SHALL NOT POSSESS, USE, CARRY, OR OBTAIN ANY DEADLEY WEAPON** at any time while the Order remains active, unless Respondent is excepted for official use pursuant to 18 U.S.C. 925(a)(1). **RESPONDENT SHALL TURN OVER ALL DEADLY WEAPONS AND CONCEAL CARRY WEAPON LICENSE** in Respondent's possession to the law enforcement agency that serves Respondent with this Order or as follows: * * * Any law enforcement agency is authorized to take possession of deadly weapons pursuant to this paragraph and hold them in protective custody until further Court order. (NCIC 07) Upon the expiration of this Order, any deadly weapons, including firearms and ammunition, held in protective custody by law enforcement pursuant to this Order shall be disposed of as unclaimed property pursuant to R.C. 2981.12 unless the Respondent files a motion for return with this Court within 30 days before the expiration of the Order." (Emphasis sic.)

admitted to having been convicted of two charges of intoxicated driving, one in 2015 and again in 2017. He denied having ever used his father's date of birth to avoid police, stating that his father was 55 years old as of the hearing date and denying that he could believably have asserted that he was that age.

{¶ 7} Regarding the events on May 26, 2019, M.G.S. recounted that early in the day, there was an incident between A.A. and his sister at his sister's house during which A.A. sprayed his sister with pepper spray. In the aftermath of that incident, M.G.S. told police that A.A.'s friend would likely show up soon with a gun, and, while police were still on the scene, M.G.S.'s friend did so and was confronted by police. Then, later in the day, M.G.S. and his family were having a barbecue at M.G.S.'s parents' house and A.A.'s friend drove by slowly, rolled down the window, and pointed a gun at M.G.S. and his family. M.G.S. ran inside with everyone but retrieved a gun and went back out of the house to confront A.A.'s friend. M.G.S. denied pointing or firing his weapon and stated that, at all times, he remained on his family's property during the incident. A.A.'s friend was charged by police in the incident and M.G.S. was listed as the victim.

{¶ 8} M.G.S. acknowledged he met A.A. when she was 15 and they moved in together. Although M.G.S. could not recall how old she was when she became pregnant, the petition records A.A.'s birthday as September 1995 and the birthday of the parties' child as June 2013. M.G.S. was born in 1990.

{¶ 9} After all the evidence was introduced at the hearing, the trial court heard closing arguments from both sides and declared a short recess. On reconvening, the trial court ruled orally from the bench, finding A.A. had proven M.G.S. engaged in a pattern of behavior which constitutes domestic violence and issued a two-year protection order in A.A.'s favor. Thereafter, the trial court, on the same day—June 12, 2019, issued a protection order in force until May 29, 2021. M.G.S. now appeals.

## II. Assignments of Error

{¶ 10} M.G.S. presents two assignments of error for our review:

> [ I.] THE TRIAL COURT ERRED BY FAILING TO USE THE CORRECT LEGAL STANDARD FOR THE PURPOSES OF GRANTING THE DOMESTIC VIOLENCE PROTECTION ORDER.
>
> [II.] EVEN ASSUMING, ARGUENDO, THAT THE COURT APPLIED THE CORRECT STANDARD, THE COURT ERRED IN THAT ITS DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

We will discuss the two assignments of error together.

## III. Discussion

{¶ 11} Granting a protection order is within a trial court's discretion and our standard of review is abuse of discretion. *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 15. Questions of law arising from the proceedings are reviewed de novo. *Id.* at ¶ 16, citing *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6. Furthermore, the trial judge, as the fact finder, is entitled to weigh the credibility of the witnesses. *J.W.* at ¶ 15.

{¶ 12} The trial court based its decision to grant the protection order on the basis that: "[A.A.] has proven that [M.G.S.] has committed a pattern of behavior that the Court finds is domestic violence. * * * I believe that she has proven that there is a pattern of behavior. I will issue the protection order for two years." (Tr. at 164-66.) Specifically, the court stated:

> [1.] The Court finds that [M.G.S.] had intercourse with [A.A.] at the age of 16. She was living with him at the time which placed [M.G.S.] in a position of power, as he was providing for her basic needs.
>
> [2.] The Court finds that [A.A.] has successfully challenged the credibility of [M.G.S.].
>
> She produced a police report * * * where [M.G.S.] used a different birthdate and was charged with falsification.
>
> [M.G.S.] testified that he never used his father's birthdate.
>
> The Court finds that [A.A.] has provided proof that [M.G.S.'s] credibility should be questioned.
>
> [3.] [M.G.S.] does have a carry concealed permit. However, [M.G.S.] testified that he went into the house and returned with a gun. He said that he was afraid for his life, but he went back outside to confront the witness [A.A.'s friend].
>
> The Court finds that there was a similar incident where [A.A.] and her witness testified that [M.G.S.] kicked the side of [A.A.'s] car with [her friend] in the car and that [M.G.S.] pulled a weapon on her at 3-C carryout I think in 2016.
>
> I believe that she has proven that there is a pattern of behavior. I will issue the protection order for two years.

(Tr. at 164-66.)

{¶ 13} Consistent with the findings made at the hearing, the court filed findings of fact on June 12, 2019 and stated:

> This matter came before the Court on JUNE 12, 2019 for full hearing. [A.A.] appeared pro se and [M.G.S.] appeared represented by Priya Tamilarisan. The Court took testimony from [A.A.], [J.A.], [R.W.] and [M.G.S.]. The Court makes the following findings:
>
> [1.] [A.A.] is a resident of Franklin County. [A.A.] and [M.G.S.] lived with [M.G.S.] until 2015;
>
> [2.] [A.A.] and her witness testified that [M.G.S.] kicked the side of [A.A.'s] car with [R.W.] in the car and [M.G.S.] pulled a weapon on her at Three-C carryout in 2016;
>
> [3.] [M.G.S.] does have a carry concealed permit. [M.G.S.] testified that he went into the house and returned with a gun. He said that he was afraid for his life but he went back outside to confront the witness, [R. W.].
>
> [4.] [A.A.] provided police reports challenging the credibility of [M.G.S.]. She produced a police report * * * where [M.G.S.] used a different birthdate and was charged with falsification. [M.G.S.] testified that he never used his father's birthdate. The Court finds that [A.A.] has provided proof that [M.G.S.'s] credibility should be questioned.
>
> [5.] [A.A.] has proven that [M.G.S.] had intercourse with her at the age of 16. She began living with him at the age of 16 and had a child with[him]. [M.G.S.] was in a position of power as he was providing [A.A.'s] basic needs.
>
> [6.] [A.A.] testified and the Court finds that she has proven a pattern of behavior that the Court finds is domestic violence.

{¶ 14} A domestic violence civil protection order may be granted pursuant to R.C. 3113.31(E) to bring about a cessation of domestic violence. "Domestic violence" includes the occurrence of committing a violation of *menacing by stalking* against a family or household member or against a person with whom the respondent is or was in a dating relationship. R.C. 3113.31(A)(1)(a)(ii).

{¶ 15} "Menacing by stalking" is prohibited by R.C. 2903.211(A) which states: "No person by engaging in a *pattern of conduct* shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member." (Emphasis added.)

{¶ 16} The trial court found A.A. had proven "a pattern of behavior that the Court finds is domestic violence." (Findings of Fact at ¶ 6.) We construe the term "pattern of behavior" as used by the trial court to mean the same as "pattern of conduct" as defined in R.C. 2903.211(D)(1).

{¶ 17} R.C. 2903.211(D)(1) defines "pattern of conduct" as "two or more actions or incidents *closely related in time*, whether or not there has been a prior conviction based on any of those actions or incidents." (Emphasis added.) The term "closely related in time" is not defined by statute.

{¶ 18} Regarding the meaning of "closely related in time," this court has held "whether the incidents in question were closely related in time should be resolved by the trier of fact considering the evidence in the context of all the circumstances in the case." (Internal quotations omitted.) *State v. Lawson*, 10th Dist. No. 06AP-1112, 2007-Ohio-2656, ¶ 24, quoting *State v. Bone*, 10th Dist. No. 05AP-565, 2006-Ohio-3809, ¶ 24, quoting *State v. Dario*, 106 Ohio App.3d 232, 238 (1st Dist.1995). Moreover, a "pattern of conduct establishes how present behavior which is apparently innocent can be deemed threatening based on prior encounters between the parties." (Internal quotations omitted.) *Id.*, quoting *Bone* at ¶ 25, quoting *State v. Shue*, 1st Dist. No. 84007, 2004-Ohio-5021, ¶ 16. We have also held that the actions or incidents "need not occur within any specific temporal period." *Jenkins v. Jenkins,* 10th Dist. No. 06AP-652, 2007-Ohio-422, ¶ 18. Further, "[i]n determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration even if * * * some of the person's actions may not, in isolation, seem particularly threatening." (Internal quotations omitted.) *J.W.* at ¶ 47, quoting *Olson v. Olson*, 6th Dist. No. WD-15-002, 2016-Ohio-149, ¶ 14.

{¶ 19} In considering what constitutes "closely related in time" in the context of the case before us, we would find persuasive the holdings of several other appellate courts in our state. The Sixth District Court of Appeals in *Ellet v. Falk*, 6th Dist. No. L-09-1313, 2010-Ohio-6219, ¶ 25, held:

> Depending upon the particular circumstances, therefore, a pattern of conduct can arise out of two or more events occurring on the same day, or it may consist of intermittent incidents occurring over a period of years.

(Citations omitted.)

{¶ 20} In *Ellet*, the Sixth District affirmed a trial court's finding of a pattern of conduct where the petitioners "testified to a number or incidents spanning a four-year

period, including two or more that occurred on [the same day, one week prior to the filing of a petition for protection order]." *Id.* at ¶ 26.

{¶ 21} Even more persuasive here, in *R.C. v. J.G.*, 9th Dist. No. 12CA0081-M, 2013-Ohio-4265, the Ninth District held:

> A series of incidents may constitute a "pattern of conduct" under the facts of a given case even if spread over the course of several years or across an intervening gap in time.

*Id.* at ¶ 12, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 11 (12th Dist.); *State v. Honeycutt*, 2d Dist. No. 19004, 2002-Ohio-3490.

{¶ 22} In *R.C.*, the Ninth District found, on the facts before it, that "although the incidents in question were spread out over three years with an intervening gap, a trier of fact could reasonably conclude that they were of the same character such that they constituted a pattern of conduct under the circumstances of this case." *Id.* at ¶ 12. In that case, the parties ended their relationship in 2008, the respondent continued to contact petitioner throughout 2009 and 2010, but then no further contact was had until July 2012. The trial court in *R.C.* granted the petitioner a civil protection order.

{¶ 23} The facts in the case before us are similar to the facts in *R.C.* Here, A.A., appearing pro se,[2] testified that from 2012-15, when she was together with M.G.S., "he would use his gun to threaten [her]." (Tr. at 5.) She also testified M.G.S. physically abused her. On New Year's Eve 2015, M.G.S. kicked the truck in which A.A. and her friend were sitting and drew a gun on her. A.A. did testify that she had no contact with M.G.S. since 2017, but also testified that in May 2019 M.G.S., along with his mother and sister, got into an altercation with her in which they called her names and "[h]e was lying, telling the police

---

[2] A.A. represented herself at the hearing. She was placed under oath, and on direct examination answered the trial judge's limited questions. She was cross-examined by M.G.S.'s attorney. At the end of cross-examination, the trial court did not offer A.A. the opportunity for redirect examination but, rather, inquired if she had any additional witnesses. A.A. called her mother to the stand but the trial court would not permit her to testify because the mother could not speak English and the trial court was not informed in advance that an interpreter was needed. In closing argument, A.A stated, without objection from M.G.S.: "This nightmare has started since I was 16 years old. I've been forced to do things that I hadn't wanted to do. I was forced to say things that I hadn't wanted to do. I was forced to feel things I should not be feeling at a young age. I was mentally and emotionally held hostage against my family. I've been threatened and they hold my family over my head. I lost a few jobs because of his family. I've lost cars because of him. I have lost communication with many people because of him. He has physically assaulted my friends. He has tried to run over my friends. He's a liar. He's aggressive. He's an alcoholic. I want to say he has two personalities. It's very hard for me to live day by day looking over my shoulder, looking outside because I know they don't always stick to one vehicle. It would be hard for me to call the cops on any vehicle. * * * I want to feel safe and I haven't since I was 16 years old. I keep trying and trying, begging strangers to help me protect my life, my daughter's life, and my family's life. At this point, I don't know who else to go to to protect myself. I don't know where else to go after this." (Tr. at 155-57.)

that [she] assaulted both his mother and his sister, which was not true [and] managed to get [her] boyfriend arrested on false accusations." (Tr. at 7-8.) The brother of A.A. testified that on the same day, M.G.S. followed him and his girlfriend in their car for about 20 minutes and "pulled [him] over again and started kicking [his] car and then [his] window, threatened [him] and [his] family inside [his] car." (Tr. at 17.)

{¶ 24} Accordingly, we find the trial court used the correct legal standard. We also find, considering the evidence in the context of all the circumstances in the case before us, that the manifest weight of the evidence supports the trial court's finding that A.A. established M.G.S. engaged in a pattern of conduct to cause her to believe he would cause physical harm to her. Thus, M.G.S. committed menacing by stalking and, therefore, the trial court did not abuse its discretion in granting A.A.'s request for a civil protection order to bring about the cessation of domestic violence pursuant to R.C. 3113.31(E) and (A)(1)(a)(ii). Appellant's two assignments of error are overruled.

## IV. Conclusion

{¶ 25} Having overruled appellant's two assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

NELSON, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 26} I respectfully dissent from the decision of the majority in this appeal. Respondent-appellant, M.G.S., appeals a civil protection order issued in favor of petitioner-appellee, A.A., on June 12, 2019 by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Because the standard of review is abuse of discretion, this Court should defer to the trial court's factual findings. According to my review of the record and the law, I would find that the trial court committed an error of law in analyzing whether its findings justified the grant of a civil protection order, and I would sustain M.G.S.'s first assignment of error, reverse and remand with instructions, making M.G.S.'s second assignment of error moot.

## I. FACTS AND PROCEDURAL POSTURE

{¶ 27} While many of the facts discussed in this separate opinion are duplicative of those in the majority opinion, they are reflective of what is in the transcript of proceedings before the trial court. For instance, in paragraph 5 where the majority calls the witness,

A.A.'s "friend," the record reflects that he was her boyfriend. The majority decision also omits the fact that A.A. tried to obtain protection orders against M.G.S.'s mother and sister.

{¶ 28} Granting a protection order is within a trial court's discretion and our standard of review is abuse of discretion. *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 15. Questions of law arising from the proceedings are reviewed de novo. *Id.* at ¶ 16, citing *Martin v. Martin*, 10th Dist. No. 13AP-171, 2013-Ohio-5703, ¶ 6. In order to promote coherence and understanding of my views in applying the law to the facts of this case under an abuse of discretion standard of review, I restate the facts in this separate decision, even though some may be duplicative.

{¶ 29} On May 30, 2019, A.A. petitioned the trial court for a civil protection order and obtained an ex parte temporary order. (May 30, 2019 Petition; May 30, 2019 Temporary Order.) Approximately two weeks later, on June 12, the court held a hearing on the matter. (June 12, 2019 Hearing Tr., filed June 24, 2019.) At the hearing, four witnesses testified: A.A., her brother, her boyfriend, and M.G.S.

{¶ 30} The first to testify was A.A. Under questioning from the trial judge, A.A. testified she was in a relationship with M.G.S. from 2012 to 2015 and, as a result, they have a child (a daughter) together. (Hearing Tr. at 5.) She testified that throughout that relationship, he threatened her with a gun. *Id.* She said she had not had contact with M.G.S. since 2017. *Id.* When pressed to testify regarding more recent matters and why a protection order was necessary now, A.A. testified that an incident had occurred in late May 2019 at M.G.S.'s sister's house. *Id.* at 6-9; *see also* Petitioner's Ex. 15. She said M.G.S. was present during an altercation between A.A. and M.G.S.'s mother and sister during which A.A.'s pepper spray was triggered. (Hearing Tr. at 6-9.) She further testified that on the same day, M.G.S. followed her brother and threatened to kill him and his wife and kids. *Id.* at 6. When asked about what M.G.S. did to her directly, she said he called her names, helped his mother and sister emotionally abuse her, lied to the police saying that she had assaulted his mother and sister, and managed to get her boyfriend arrested on false allegations. *Id.* at 7-9. She also admitted that she had tried and failed to obtain ex parte protection orders against M.G.S.'s sister and mother. *Id.* at 9-11.

{¶ 31} The next witness was A.A.'s brother. He testified that on May 26, 2019 (the same day of the altercation between A.A. and M.G.S.'s sister and mother), he was driving to A.A.'s house (the route which took him near M.G.S.'s house) when he noticed M.G.S. following him. *Id.* at 15-17. He testified that M.G.S. pulled him over twice and kicked the car uttering threats against him and his family. *Id.* He acknowledged that, on other

occasions, he and M.G.S. have been cordial with each other.  *Id.* at 18-19.  He stated that he did not witness the confrontation between A.A. and M.G.S.'s mother and sister.  *Id.* at 24-25.

{¶ 32}  A.A.'s boyfriend was the final witness to testify in favor of the petition.  He testified that he witnessed an argument on New Year's Eve 2015-16 at the 3-C Food Mart between A.A. and M.G.S. in which M.G.S. kicked the truck in which A.A. was sitting and drew a gun.  *Id.* at 31-32.  He testified that although the argument was in Spanish, he was able to discern that M.G.S. was speaking aggressively.  *Id.* at 34.  He acknowledged that there was, as of the hearing date, a criminal charge pending against him for pointing a gun at M.G.S. and his family on May 26, 2019, but he denied that he had actually committed that offense.  *Id.* at 35-36.

{¶ 33}  After the close of A.A.'s evidence, the trial court denied a motion by M.G.S.'s counsel for a directed verdict.  *Id.* at 47.  M.G.S. then testified that he had never assaulted or threatened A.A. and that he had never been arrested or questioned by the police for threats or violence against A.A.  *Id.* at 49, 85-86.  He also denied sending his family members to hurt her.  *Id.* at 138.  He asserted that any problems between the two of them were as a result of her preventing him from seeing his daughter.  *Id.* at 85-86.  He agreed he had a concealed carry license and at first denied a criminal history.  *Id.* at 52.  But he ultimately admitted to having been convicted of two charges of intoxicated driving, one in 2015 and again in 2017.  *Id.* at 65-68.  He denied having ever used his father's date of birth to avoid police, stating that his father was 55 as of the hearing date and denying that he could believably have asserted that he was that age.  *Id.* at 67.

{¶ 34}  Regarding the events on May 26, he recounted that, early in the day, there was an incident between A.A. and his sister at his sister's house during which A.A. sprayed his sister with pepper spray.  *Id.* at 50-51, 116-17, 125.  In the aftermath of that incident, M.G.S. told the police that A.A.'s boyfriend would likely show up soon with a gun and, while the police were still on the scene, A.A.'s boyfriend did so and was confronted by police.  *Id.* at 117-18; Respondent's Ex. B.  Then, later in the day, M.G.S. and his family were having a barbecue at M.G.S.'s parents' house and A.A.'s boyfriend drove by slowly, rolled down the window, and pointed a pistol at M.G.S. and his family.  (Hearing Tr. at 49-50, 121-24.) M.G.S. ran inside with everyone but retrieved a pistol and went back out of the house to confront A.A.'s boyfriend.  *Id.* at 59-61, 97-98, 109-12.  M.G.S. denied pointing or firing his weapon and stated that, at all times, he remained on his family's property during the

incident. *Id.* at 53, 59-61. A.A.'s boyfriend was charged by police in the incident, and M.G.S. was listed as the victim. *Id.* at 51-52.

{¶ 35} M.G.S. acknowledged that he met A.A. when she was 15 and that they moved in together. *Id.* at 81-82. Although M.G.S. could not recall how old she was when she became pregnant, the petition records A.A.'s birthday as September 1995 and the birthday of the parties' daughter as June 2013. (May 30, 2019 Petition at 1.) A.A. gave birth to their daughter several months before she turned 18, with conception around her 17th birthday. M.G.S. was born in November 1990, making him in his early twenties during the time he and A.A. were in a relationship and living together. *Id.*

{¶ 36} A number of exhibits were also admitted during the hearing, only some of which are relevant to this appeal. One exhibit that was admitted without objection, was an uncertified copy of a docket sheet showing a dismissed charge of falsification with M.G.S.'s birthday noted as March 1, 1967. (Petitioner's Ex. 8; Hearing Tr. at 57, 142-43.) Another of petitioner's exhibits (wherein A.A. was the suspected offender in an assault against M.G.S.'s sister and mother) lists a birthday for M.G.S.'s mother as March 1, 1967. (Petitioner's Ex. 15 at 5.) Among M.G.S.'s exhibits is a police report detailing the arrest of A.A.'s boyfriend for having "flashed a handgun while driving in front of" M.G.S.'s family home. (Respondent's Ex. C at 1.) The report listed four witnesses, the first two may have been related to M.G.S. (based on surnames), but there is no indication the second two were related. *Id.* at 5-7. The report narrative was read into the record of the hearing and is as follows:

> The Victim [M.G.S.] stated that the Arrestee [A.A.'s boyfriend] pointed a handgun at him, in front of the listed location [M.G.S.'s family home], threatening him and his family. Witness #1 and Witness #2 observed the Arrestee flashed [sic] a handgun while driving in front of the listed location. Witness #3 and Witness #4 stated that they observed the Victim and Arrestee both pointing handguns at each other, but was [sic] unable to tell who pointed their handgun first. Reporting Officers filed a warrant on the Arrestee for the listed charge [menacing].

*Id.* at 1-2; *see also* Hearing Tr. at 122-23.

{¶ 37} After all the evidence was introduced at the hearing, the trial court heard closing arguments from both sides and declared a short recess. *Id.* at 155-64. On reconvening, the trial court ruled orally from the bench. *Id.* at 164-66. It found that A.A. had proven that M.G.S. engaged in a pattern of domestic violence and issued a two-year

protection order in A.A.'s favor.  *Id.*  Thereafter, the trial court on the same day, June 12, 2019, issued a protection order in force until May 29, 2021.  (June 12, 2019 Protection Order at 1.)  M.G.S. now appeals.

## II. DISCUSSION

{¶ 38}  Following a hearing, "the court may grant any protection order * * * to bring about a cessation of domestic violence against the family or household members or persons with whom the respondent is or was in a dating relationship." R.C. 3113.31(E)(1). Domestic violence is defined in relevant part as follows:

> (a) The occurrence of one or more of the following acts against a family or household member:
>
> * * *
>
> (ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;
>
> * * *
>
> (iv) Committing a sexually oriented offense.
>
> (b) The occurrence of one or more of the acts identified in divisions (A)(1)(a)(i) to (iv) of this section against a person with whom the respondent is or was in a dating relationship.

R.C. 3113.31(A)(1).  A person commits menacing by stalking when the person "engag[es] in a pattern of conduct [that] knowingly cause[s] another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person."  R.C. 2903.211(A)(1).  A " '[p]attern of conduct' means two or more actions or incidents closely related in time."  R.C. 2903.211(D)(1).

{¶ 39}  "Where a trial court grants a [civil protection order] based on a petitioner's fear of imminent serious physical harm, the critical inquiry under [R.C. 3113.31] is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm."  (Internal quotation marks omitted and citations omitted.) *Strassell v. Chapman*, 10th Dist. No. 09AP-793, 2010-Ohio-4376, ¶ 7.  To obtain a civil protection order based on menacing by stalking, the petitioner must show at least two incidents closely related in time in order to show a pattern of conduct to prove that the offender knowingly caused the petitioner to believe that the offender would cause physical

harm to the petitioner or a member of her family or household. *Downs v. Strouse*, 10th Dist. No. 05AP-312, 2006-Ohio-505, ¶ 11.[3]

{¶ 40} In this case, it is undisputed that A.A. and M.G.S. were (during 2012-2015) in a relationship and had a child together; this satisfies the "domestic" part of the definition of "domestic violence." R.C. 3113.31(A)(1)(b). (Hearing Tr. at 5.) The trial court based its decision to grant the protection order on a single legal conclusion: "Petitioner has proven that Respondent has committed a pattern of behavior that the Court finds is domestic violence. * * * I believe that she has proven that there is a pattern of behavior. I will issue the protection order for two years." (Hearing Tr. at 164-66.) This legal conclusion appears to have been based on three underlying factual findings—that M.G.S. lived with and biologically fathered A.A.'s child when she was 16, that M.G.S. was not credible, and that, similar to the May 26, 2019 confrontation, in 2016 there was an incident in which M.G.S. threatened A.A. with a gun. *Id.* Specifically, the court said:

> Petitioner has proven that Respondent has committed a pattern of behavior that the Court finds is domestic violence.
>
> * * * [1.] The Court finds that the Respondent had intercourse with [A.A.] at the age of 16. She was living with him at the time which placed Respondent in a position of power, as he was providing for her basic needs.
>
> [2.] The Court finds that Petitioner has successfully challenged the credibility of Respondent.
>
> She produced a police report, 2015 CRB 12695, where Respondent used a different birthdate and was charged with falsification.
>
> Respondent testified that he never used his father's birthdate.
>
> The Court finds that Petitioner has provided proof that Respondent's credibility should be questioned.
>
> [3.] Respondent does have a carry concealed permit. However, Respondent testified that he went into the house and returned with a gun. He said that he was afraid for his life, but he went back outside to confront the witness [A.A.'s boyfriend].

---

[3] Rather than "physical harm," it is also permissible to show that the offender knowingly caused "mental distress" to the petitioner or a member of the petitioner's family or household. R.C. 2903.211(A)(1). " 'Mental distress' means any of the following: (a) Any mental illness or condition that involves some temporary substantial incapacity; (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2). No such mental distress is alleged in this case, and we address that issue no further in this decision.

> The Court finds that there was a similar incident where Petitioner and her witness testified that Respondent kicked the side of Petitioner's car with [her boyfriend] in the car and that Respondent pulled a weapon on her at 3-C carryout I think in 2016.
>
> I believe that she has proven that there is a pattern of behavior. I will issue the protection order for two years.

(Hearing Tr. at 164-66.)

{¶ 41} As factfinder, the trial court was entitled to weigh M.G.S.'s credibility; I would not disturb that exercise of discretion. *J.W.*, 2019-Ohio-4018, at ¶ 15.

{¶ 42} In applying a legal analysis to its factual conclusions, the trial court twice said it was granting the protection order not because of fear of imminent harm but because of a "pattern of behavior" that it found constituted domestic violence. (Hearing Tr. at 164-66.) In other words, rather than attempt to consider whether A.A. reasonably feared "imminent serious physical harm" from M.G.S., the trial court focused on whether there was a pattern of conduct to support a charge of menacing by stalking as a basis for the order. R.C. 3113.31(A)(1)(a)(ii); *see Strassell*, 2010-Ohio-4376, at ¶ 7; R.C. 2903.211(A)(1), (D).

{¶ 43} What is missing from the trial court's legal conclusions was a "pattern of conduct" analysis. It found a threatening incident occurred in 2016 (the New Year's Eve 2015-16 incident at 3-C). (Hearing Tr. at 165.) And it found that there had been a "similar incident" (presumably referring to the May 26 incident) involving A.A.'s boyfriend. *Id.* But those incidents occurring almost three and one-half years apart do not facially appear to constitute "two or more actions or incidents closely related in time," as contemplated in R.C. 2903.211(D). *Downs*, 2006-Ohio-505, ¶ 11.[4] While the question of whether incidents are closely related in time may be an issue for a trier-of-fact to resolve based on the circumstances of the case, there is no indication in this case that the trial court considered the timing question at all. *State v. Bone*, 10th Dist. No. 05AP-565, 2006-Ohio-3809, ¶ 24; *State v. Dario*, 106 Ohio App.3d 232, 238 (10th Dist.1995).

{¶ 44} The trial court also did not explicitly proceed according to R.C. 3113.31(A)(1)(a)(iv) to find that M.G.S. had committed domestic violence against A.A. by "[c]ommitting a sexually oriented offense." R.C. 3113.31(A)(1)(a)(iv). Yet, the trial court still made findings that suggested an intention to rely on that portion of the statute and to

---

[4] Though not technically necessary to this analysis, it is also worth noting that though the trial court found the incidents to be "similar," it in no way explained how that was so, given that the police officers, who responded on May 26, 2019, determined that M.G.S. was the victim and arrested and charged A.A.'s boyfriend with menacing. (Respondent's Ex. C.)

have admitted the evidence for that purpose. (Hearing Tr. at 82.) The trial court found that A.A. was 16 when M.G.S. biologically fathered her child and concluded that since A.A. lived with M.G.S., he exerted authority over her. (Hearing Tr. at 164.) Under the law, these findings are of no legal significance to whether M.G.S. committed a sexually oriented offense against A.A. In Ohio, a 16-year-old (though still a juvenile for some purposes) is deemed old enough to be capable of consenting to sexual activity with an adult. *See* R.C. 2907.04(A); R.C. 2707.07(B); R.C. 2907.01(I) and (M). Nor did M.G.S. serve as A.A.'s parent, custodian, person acting in loco parentis, coach, teacher, or any other category of authority figure contemplated in the chapter regarding sex offenses. *See, e.g.*, R.C. 2907.03(A)(5) through (9). Thus, the trial court's findings, to the extent they might have been intended to suggest domestic violence by sexually oriented misconduct, did not supply the necessary legal significance for its legal conclusions.

{¶ 45} Thus, the trial court did not make factual findings necessary to legally conclude that M.G.S. had committed a sexually oriented offense against A.A. R.C. 3113.31(A)(1)(a)(iv). Nor did it make factual findings necessary to conclude that A.A. had established a pattern of conduct (defined by incidents close together in time) to show M.G.S. had committed the offense of menacing by stalking. R.C. 3113.31(A)(1)(a)(ii); R.C. 2903.211(A)(1) and (D). And even taking the factual findings of the trial court at face value, the trial court's findings did not sustain issuing the protection order under R.C. 3113.31. I would accordingly find error and sustain M.G.S.'s first assignment of error, reversing the trial court's decision and rendering M.G.S.'s second assignment of error moot.

{¶ 46} Specifically, I would instruct the trial court on remand to (1) schedule a new full hearing for a date that is within ten court days after filing of the judgment entry in this appeal, consistent with the requirements of R.C. 3113.31(D)(2)(a) (and any allowable continuances under that statute); (2) conduct the new hearing; and (3) EITHER make the findings necessary to substantiate the existing protection order OR, if it is unable to do so, vacate its June 12, 2019 order.[5]

---

[5] *See, e.g.*, *E.W. v. T.W.*, 10th Dist. No. 16AP-88, 2017-Ohio-8504, ¶ 22-23 (reversing and remanding with similar instructions).