[Cite as *Ferguson v. Ferguson*, 2021-Ohio-297.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| ANGELEA FERGUSON, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| SHAWN A. FERGUSON, | : | Case No. 20AP0004 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Morgan County
                             Court of Common Pleas, Case No.
                             2019DV0200

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            February 3, 2021

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JANA C. WOODBURN                       KRISTOPHER K. HILL
214 W. Liberty Street                  17 N. 4th Street
McConnelsville, Ohio  43756            Zanesville, Ohio 43701

*Baldwin, J.*

{¶1}   Defendant-appellant Shawn Ferguson appeals from the June 18, 2020 Journal Entry of the Morgan County Court of Common Pleas granting a Domestic Violence Civil Protection Order to plaintiff-appellee Angelea Ferguson.

STATEMENT OF THE FACTS AND CASE

{¶2}   On October 10, 2019, a deputy responded to a call of a domestic violence dispute at the home of the parties and appellant was detained and arrested. Appellant was charged with domestic violence.

{¶3}   On October 10, 2019, appellee had filed a Petition for a Domestic Violence Civil Protection Order against appellant pursuant to R.C. 3113.31.  Appellee also sought relief on behalf of the parties' young son. An ex parte Domestic Violence Civil Protection Order was filed on October 10, 2019. A final hearing was held on June 2, 2020.

{¶4}   At the hearing, appellee testified that appellant was her husband and that they had been married since December 29, 2016. She testified that she was living with appellant on October 10, 2019 and that the relationship between the two was "[t]umultuous." Transcript at 7. She testified that appellant was sometimes full of rage and would yell at her and throw stuff at her. She testified that she had a coffee cup, a coffee pot and a plate  thrown at her and that appellant had thrown a plate at her and her son once. While none of the items hit her, she testified that she was afraid when the items were coming at her.

{¶5}   On October 10, 2019, appellee woke up around 5:00 a.m. for work. She had fallen asleep on the bed with her two sons and appellant slept on the sofa or in the guest room. While her oldest son, who was eight years old, is not appellant's son, appellant is

the father of her youngest son, who was two and a half years old. When appellee got up, appellant came in and laid in bed with the boys. Appellee testified that her oldest son wanted to go into his room and that appellant told him no. After she told her son to go ahead, appellant got frustrated and the two started arguing. Appellant then woke up their son by picking him up and the two started arguing and fighting.

{¶6}   Appellee finally got their son back and when she tried to leave through the bedroom door, appellant would not let her. Appellant, appellee testified, did not want her to leave with both the kids and started pulling on the child that she was holding causing marks on his back. Appellee was finally able to get out of the room and called the police.

{¶7}   Appellee testified that during the argument, appellant did not hit her or throw anything at her and that she did not recall him threatening her. Only the two-and-a-half-year-old was injured. Appellee testified that appellant was yanking the child while she held him, causing abrasions on his lower back from the diaper. Appellee took a photograph of the child's lower back a couple of days later.  She testified that he did not have any marks on his backside prior to this incident and had not been harmed by appellant in any way before. Appellee testified that appellant had grabbed her before countless times when she was trying to leave. She testified that he had not done any other physical harm to her in the past and had not threatened her verbally but that if he was mad and did not want her to leave, "he's like body checking me and blocking me from leaving, I personally take that as a threat." Transcript at 15. Appellant would "take his chest and keep pushing it into me and pushing it into me until I'm, like, backed into, like a corner or stuck somewhere." Transcript at 15. Appellee testified that appellant had caused property damage and had busted their kitchen door by elbowing it or punching it

out and had caused other property damage by throwing things. When asked, she testified that she was afraid of appellant because of "[a]ll of these experiences combined." Transcript at 16.  She testified that she was asking for the Civil Protection Order because she was scared that if she did not have one "he's going to barge back in hot in his emotions because it's already happened before." Transcript at 16. Appellant had texted her once during the Civil Protection Order because he thought that the charges were dropped and had spoken to her twice.

{¶8}    Appellee testified that appellant was charged after the October 10, 2019 incident but was not found guilty. The following testimony was adduced when she was asked if anything happened after that trial:

{¶9}    A.  That night he showed up to the house 'cause he thought all the charges were dropped so he showed up with one of the town cops, Ferguson.  And my mom FaceTimed me because I was working nights at the time, and Shawn [appellant] tried charging into the house.  He was saying how he's going to contact his lawyer and evict my mom.  My mom asked him to calm down because my oldest son was there 'cause he was crying.  He said he didn't care.  So I had to leave work early to come home.

{¶10}  Transcript at 18.

{¶11}  Appellee testified that she told her sister once or twice about the incidents and that she believed that serious physical harm would happen to her if she did not have the Civil Protection Order and that she did not feel safe.

{¶12}  On cross-examination, appellee testified that prior to October 10, 2019, she and appellant had argued and he had accused her of being unfaithful. She agreed that she had admitted under oath during appellant's trial that she had cheated on appellant

and that he had never threatened her before. Appellee testified that on October 10, 2019, appellant did not hit her or intend to hit her, did not strike her, and did not verbally threaten her. She further testified that she admitted that, on October 10, 2019, the struggle over their young son was because appellant did not want her to take the child and that appellant was not trying to hurt their son. Appellee testified that appellant was a good father who cared a lot for his son.

{¶13} On redirect, appellee testified that she filed for divorce shortly after the incident over concerns about safety for her and the children. She testified that she did not use the court proceedings to try to take advantage of her children's' fathers and did not use the court to get what she wanted.

{¶14} Appellant testified that he never struck appellee, never hit her and never threatened her. He admitted throwing stuff, but testified that he did not throw stuff at her so as to hit her. He testified that he threw his phone at the wall causing a gash in the wall and pushed a coffee pot off of an island, causing it to fall to the ground and break. He testified that he did not intend to cause physical harm to their son that day, but wanted their son to stay there with him. When asked, he testified that he never had done anything to try to cause physical harm to appellee and that he believed that appellee had filed the motion to get what she wanted in the divorce. He testified that the mark on the child's lower back happened three days prior to the incident.

{¶15} On cross-examination, appellant testified that he raised his voice a lot and that he agreed that someone might be scared if they saw someone throw a phone against the wall. He testified that he intentionally knocked the coffeepot off of the counter and that he thought that might scare someone. He denied ever physically blocking appellee from

leaving a room or grabbing ahold of appellee but later testified that he blocked the kitchen doorway to keep appellee from taking their son. The following is an excerpt from appellant's testimony:

**{¶16}** Q. So you blocked the doorway.  Do you think that could threaten or intimidate someone if you stand in a doorway and you don't let them escape?

**{¶17}** A. Yes. Well, I did end up letting her leave, though.  I let her leave 'cause then she would get in her car and she went to the parking lot to cool down, come back.  I always let her leave.  She always took - - when this would happen, she always left.

**{¶18}** Q.  So you let her leave so you control when she can leave?

**{¶19}** A.  I didn't let her leave, but you just said that I would stand in front of the doorway so then, therefore, I would move out of the way to let her leave, yeah.

**{¶20}** Transcript at 42-43.

**{¶21}** Bruce Ferguson, Sr., appellant's father, testified that he babysat the parties' son from time to time and that the child got the mark on his lower back from a trampoline a week or so before the October 10, 2019 incident. He testified that appellant never did anything to hurt his son.  He testified on cross-examination that he never saw appellant throw anything and that the parties' son got the marks from toys on the trampoline.

**{¶22}** At the conclusion of the hearing, the court, pursuant to a Journal Entry filed on June 2, 2020,  ordered that each party submit Proposed Findings of Fact and Journal Entries within two weeks.

**{¶23}** On June 5, 2020, appellee filed a motion asking that the court modify the ex parte Domestic Violence Civil Protection Order to remove the parties' minor child as a

protected party. As memorialized in a Journal Entry filed on June 10, 2020, the motion was granted.

**{¶24}** The trial court, via a Journal Entry filed on June 18, 2020, granted the Domestic Violence Protection Order and ordered that it remain in effect, as modified, for a period of five years.

**{¶25}** Appellant now appeals, raising the following assignment of error on appeal:

**{¶26}** "I. THE TRIAL COURT ERRED IN ISSUING A CIVIL PROTECTION ORDER, BASED UPON R.C. 3113.31, AS THE APPELLEE FAILED TO ESTABLISH, BY A PREPONDERANCE OF THE EVIDENCE, SUFFICIENT CREDIBLE EVIDENCE THAT APPELLANT ENGAGED IN ACTS OR THREATS OF DOMESTIC VIOLENCE. THERE WAS NO INCIDENT OF DOMESTIC VIOLENCE BETWEEN THE PARTIES TO SUPPORT A FINDING THAT APPELLEE WAS IN IMMINENT DANGER OF DOMESTIC VIOLENCE AT THE TIME OF THE FILING OF THE PETITION."

I

**{¶27}** Appellant, in his sole assignment of error, argues that appellee failed to establish, by a preponderance of the evidence, sufficient evidence that appellant had engaged in acts or threats of domestic violence and that there was no incident of domestic violence between the parties to support a finding that appellee was in imminent danger of domestic violence at the time of the filing of the petition. We disagree.

**{¶28}** Pursuant to R.C. 3113.31, in order to obtain a domestic violence CPO, the petitioner must prove by a preponderance of the evidence the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997). As defined by R.C.

3113.31(A)(1), the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

{¶29} (a) Attempting to cause or recklessly causing bodily injury;

{¶30} (b) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

{¶31} (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

{¶32} (d) Committing a sexually oriented offense.

{¶33} The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 5th Dist. Tuscarawas No. 2015AP020007, 2015-Ohio-4755. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶34} In *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), the Ohio Supreme Court noted the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its judgment for that of the fact finder. A trial court is in a much better position than an appellate court to weigh the evidence, because it views the witnesses and observes their demeanor, gestures, and inflections. See *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). The fact finder is free to believe all, part, or none of the

testimony of each witness. See *State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Therefore, a judgment supported by competent and credible evidence going to all the elements of the case generally will not be disturbed by a reviewing court. See *Masitto v. Masitto,* 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

**{¶35}** In *Watts v. Watts,* 5th Dist. Fairfield No. 13-CA-63, 2014-Ohio-1901, we cited to the Tenth District's analysis necessary to determine whether to grant a domestic violence CPO:

> Civil protection orders are intended to prevent violence before it happens. *Young v. Young,* 2d Dist. No.2005-CA-19, 2006-Ohio-978, ¶ 105. Where a trial court grants a CPO based on a petitioner's fear of imminent serious physical harm, the critical inquiry under [R.C. 3113.31] is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. *Fleckner v. Fleckner,* 10th Dist. Franklin No. 98AP-1213, quoting *Strong v. Bauman,* (May 21, 1999), 2d Dist. No. 17256.

> Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if they fear resulting from those threats is reasonable. *Fleckner* at ¶ 21, quoting *Lavery v. Lavery* (Dec. 5, 2001), 9th Dist. No. 20616, appeal not allowed (2002), 95 Ohio St.3d 1409 (internal quotation marks omitted). The reasonableness of the fear should be determined with reference to the history between the petitioner and the respondent. *Id.,* quoting *Gatt v. Gatt* (April 17, 2002), 9th Dist. No. 3217-M,

citing *Eichenberger v. Eichenberger*, (1992), 82 Ohio App.3d 809, 613 N.E.2d 678.

Courts use both a subjective and an objective test in determining the reasonableness of the petitioner's fear. The subjective test inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm. *Fleckner* at ¶ 23 (collecting case). By contract, the objective test inquires whether the petitioner's fear is reasonable under the circumstances. *Id.*

*Strassel v. Chapman*, 10th Dist. Franklin No. 09AP-793, 2010-Ohio-4376, paragraphs 7-9.

**{¶36}** Further, trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *McElroy v. McElroy*, 5th Dist. Guernsey No. 15 CA 27, 2016-Ohio-5148. Evidence of past abuse is relevant and may be an important factor in determining whether there is a reasonable fear of further harm; however, even with past abuse, there must be some competent, credible evidence that there is a present fear of harm. *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004–Ohio–2486, ¶ 23 (7th Dist.). The reasonableness of fear should be determined with reference to the history between the petitioner and respondent. *Fleckner v. Fleckner*, 10th Dist. Franklin No. 07AP-988, 2008-Ohio-4000.

**{¶37}** Appellant specifically contends that there was insufficient evidence that appellant was in imminent danger of domestic violence at the time of the filing of the petition. He argues that appellee failed to show by a preponderance of the evidence that domestic violence had occurred.

**{¶38}** Upon our review of the record, we find that there was sufficient evidence that appellant attempted to cause physical harm to appellee and that appellee did not fail to show by a preponderance of the evidence that domestic violence occurred.   In the case sub judice, there was testimony that appellant aggressively attempted to grab the parties' minor child out of appellee's arms. There was testimony that appellant had thrown items at appellee in the past and had grabbed her from behind countless times to restrain her physically. We find that appellee had a reasonable fear of future harm from appellant. The trial court, as trier of fact, was in the best position to assess credibility.

**{¶39}** Appellant's sole assignment of error is, therefore, overruled.

**{¶40}** Accordingly, the judgment of the Morgan County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Wise, Earle, J. concur.